**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL INDICTMENT NO.** |
| **v.** | : | **1:11-CR-136-JEC/AJB** |
| | : | |
| **JOSHUA MCCULLOUGH, JIMMY** | : | |
| **RAY WHORTON**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**ORDER FOR SERVICE OF**
**REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation ("R&R") of the United States

Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and

N.D. Ga. CrR. 58.1(A)(3)(a), (b).  Let the same be field and a copy of the R&R,

together with a copy of this Order, shall be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the

R&R within **fourteen (14)** days of service of this Order.  Should objections be filed,

they shall specify with particularity the alleged error(s) made (including reference by

page number to the transcript if applicable) and shall be served upon the opposing

party.  *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990).  The party

filing objections will be responsible for obtaining and filing the transcript of any

evidentiary hearing for review by the District Court.  Failure to object in accordance with this rule waives a party's right to review.  FED. R. CRIM. P. 59(b)(2).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.**  If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge.  18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986);  *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983).  The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this  29th  day of   August   , 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL INDICTMENT NO.** |
| **v.** | : | **1:11-CR-136-JEC/AJB** |
| | : | |
| **JOSHUA MCCULLOUGH, JIMMY** | : | |
| **RAY WHORTON,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

The Court currently considers a number of motions to suppress evidence by eight of ten defendants in this case. [Docs. 112-13, 124-25, 130, 141-43, 146-48, 153-57, 163, 183, 196-97, 199, 200, 205, 213, 224-27, 230, 247, 249, 294, 307-08, 315-16]. Also, contained within some of these motions are requests for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). [*See* Docs. 125, 155-56, 163, 205, 230, 249, 294, 308, 316]. Finally, within some of these motions to suppress (or as stand alone motions) are requests for a hearing pursuant to *Jackson v. Denno*, 378 U.S. 358 (1964). [*See* Docs. 113, 141, 148, 224].

For the reasons set forth below, the undersigned **RECOMMENDS** that: (1) James McKenzie's motions to suppress evidence from the search at 925 Hemphill Road, [Docs. 112, 307, 316], be **DENIED** and McKenzie's motions to suppress

evidence from the search of the 166 Alexander Drive residence, [Docs. 294, 308, 315], be **DENIED**; (2) the motions to suppress evidence from the search of the 1828 Flat Rock Road residence by Sandra Whorton ("S. Whorton") and Jimmy Ray Whorton ("J. Whorton"), [Docs. 125 (S. Whorton), 163 (J. Whorton)], be **DENIED**; (3) Holly Autry's and Karry Autry's motions to suppress evidence from the search of 166 Alexander Drive address, [Docs. 143 (H. Autry), 226 (K. Autry)], and supplemental motion to suppress, [Docs. 230 (H. Autry), 247 (K. Autry)], be **DENIED**; (4) Holly Autry's and Karry Autry's motions to suppress evidence from the 925 Hemphill Road residence, [Docs. 200 (H. Autry), 227 (K. Autry)], and H. Autry's supplemental motion to suppress evidence from this residence, [Doc. 249] be **DENIED**; (5) Joshua McCullough's motions to suppress evidence from the search of 436 Hood Road, [Docs. 153-54], be **DENIED**; (6) McCullough's motion to suppress evidence from the search of 445 Hood Road, [Doc. 155], be **DENIED**; and (7) H. Autry's motion to suppress statements as fruits from an unlawful search, [Doc. 199], be **DENIED**. The Court also **DENIES** the requests for *Franks* hearings. [*See* Docs. 125, 155-56, 163, 205, 230, 249, 294, 308, 316].

Additionally, the undersigned **DEFERS** making recommendations on the following motions until evidentiary hearings are concluded: (1) McCullough's motion

to suppress statements during the search of 445 Hood Road, [Doc. 157];

(2) McCullough's motion to suppress evidence of his wedding band, [Doc. 197];

(3) S. Whorton's motion to suppress statements made during the search of 1828 Flat

Rock Road, [Doc. 124]; (4) McKenzie's motion to suppress evidence from his

November 3, 2010, traffic stop, [Doc. 113]; (5) K. Autry's motion to suppress

statements made on November 3, 2010, [Docs. 225]; (6) H. Autry's motion to suppress

statements made on November 3, 2010, [Docs. 142]; and (7) Bunch's motion to

suppress statements on December 9, 2010, and the fruits thereof, [Docs. 148, 205].

Since the Court is holding hearings on the motions to suppress statements, the Court

**GRANTS** the requests for *Jackson v. Denno* hearings.  [*See* Docs. 113, 141, 148, 224].

Finally, the undersigned finds that evidentiary hearings are necessary to resolve certain

motions to suppress relating to the search warrants and therefore **DEFERS** ruling on

the following motions until after evidentiary hearings: (1) Ira Butler's motions to

suppress evidence from the December 8, 2010, search of 436 Hood Road, [Docs. 130,

213[1]]; (2) the motions to suppress evidence from the search of 436 Hood Road by Paul

---

[1]       The Court allowed Butler to adopt Bunch's motion to suppress evidence from the search of 436 Hood Road based on the following oral representation: the home was owned by Bunch, purchased by McCullough, and leased by Butler.  *See* Pretrial Hrg. Recording at FTR Gold 2:21-2:23, 2:25:12-2:25:25.

AO 72A
(Rev.8/8
2)

Bunch, [Docs. 146, 196]; (3) Bunch's motion to suppress evidence from the search of 1850 Flat Rock Road, [Docs. 147, 205]; (4) McCullough's motion to suppress evidence from the search of 2220 Jodeco Road, [Doc. 156]; and (5) S. Whorton's motion to suppress evidence from the search of 1396 Commerce Drive, suites A and B, [Doc. 183].

## I.   INTRODUCTION

On March 22, 2011, a grand jury returned a four-count indictment involving the following ten defendants: Joshua McCullough, Jimmy Ray Whorton, Sandra Whorton, James McKenzie, Karry Autry, Holly Autry, Joseph Tillman, Brian Prewitt, Paul Bunch, and Ira Butler.  [Doc. 1].  Count One charged these ten defendants with conspiracy to manufacture, distribute and possess with intent to distribute at least 100 marijuana plants in violation of 21 U.S.C. §§ 841(b)(1)(B)(vii) and 846. In Count Two, these ten defendants were charged with knowingly and intentionally possessing at least 100 marijuana plants with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) and 18 U.S.C. § 2.  Count Three charged McCullough, J. Whorton, S. Whorton, McKenzie, K. Autry, H. Autry, and Bunch with possession of 40 firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.   Finally, Count Four charged Bunch with

4

possession with the intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) and 18 U.S.C. § 2.[2]

The parties then filed the following pretrial motions to suppress evidence stemming from various search warrants: (1) McKenzie's motions to suppress evidence from the search at 925 Hemphill Road, [Doc. 112, 307, 316]; (2) S. Whorton's motion to suppress evidence from the search of the 1828 Flat Rock Road residence, [Doc. 125], which her husband, J. Wharton adopted, [*see* Docs. 132, 162, 163]; (3) Butler's motions to suppress evidence from the search of 436 Hood Road, [Doc. 130, 213]; (4) H. Autry's motion to suppress evidence from the 925 Hemphill Road residence, [Doc. 200], and supplemental motions to suppress evidence from this residence, [Doc. 249]; (5) Bunch's motions to suppress evidence from the searches of 436 Hood Road, [Docs. 146, 196], and 1850 Flat Rock Road, [Docs. 147, 205]; (6) McCullough's motions to suppress evidence from the searches of 436 Hood Road, [Docs. 153-54], 445 Hood Road, [Doc. 155], and 2220 Jodeco Road, [Doc. 156]; (7) S. Whorton's motion to suppress evidence from the search of 1396 Commerce Drive, suites A and B, [Doc. 183]; (8) Butler's motion to suppress evidence from the search of 436 Hood Road, which adopted Bunch's motion to suppress, [Doc. 213]; (9) K. Autry's motions

---

[2]     The indictment also contained a forfeiture provision.  [*See* Doc. 1].

5

to suppress the searches of 166 Alexander Drive, [Docs. 226, 247], and 925 Hemphill Road, [Doc. 227]; and (10) McKenzie's motions to suppress evidence from the search of 166 Alexander Drive, [Docs. 294, 308, 315].  The government filed responses in opposition to these motions to suppress evidence on May 28, June 30, and July 13, 2011.  [Docs 236, 276, 287].  The defendants then filed a series of reply briefs to the government's May 28, 2011, response.  [Docs. 253, 255-56, 259-60, 266, 273].

Besides these motion to suppress, certain defendants filed motions for *Franks* hearings or requested such hearings.  [*See* Docs. 125 (S. Whorton), 155 (McCullough), 156 (McCullough), 163 (J. Whorton), 205 (Bunch), 230 (H. Autry), 249 (H. Autry), 294 (McKenzie), 308 (McKenzie), 316 (McKenzie)].  The defendants also filed motions for *Jackson v. Denno* hearings.  [*See* Docs. 113 (McKenzie), 141 (H. Autry), 148 (Bunch), 224 (K. Autry)].  Finally, some defendants sought to suppress statements, [Docs. 124 (S. Whorton), 142 (H. Autry), 148 (Bunch), 157 (McCullough), 199 (H. Autry), 225 (K. Autry)], evidence from a traffic stop, [Doc. 113 (McKenzie)], and evidence of a wedding ring, [Doc. 197 (McKenzie)].  The undersigned turns to the merits of these motions.

AO 72A
(Rev.8/8
2)

## II.     FACTS

### A.     *925 Hemphill Road*

The search warrant affidavit of Special Agent Brian Ponder contained the following averments. (*See* Warrant Affidavit in Doc. 238-1 at Exh. A). On October 27, 2010, Charles Saunders, an investigator from the electric company, informed the Henry County Narcotics Unit that the 925 Hemphill Road location possibly was an indoor marijuana grow location based on the abnormally high electricity consumption for a residence of its size. Saunders indicated that McKenzie set up the power on February 4, 2010, and that the electricity bill had been $1,000 per month with kilowatt per hour ("kWh") usage between 336 to 409 kWh. Henry County law enforcement set up surveillance on November 3, 2010, and surveilling Officer Warr smelled a strong odor of raw marijuana coming from the area of the residence, heard blowers or fans inside the garage, and observed a grey Chevrolet pickup truck and a blue Chevrolet sedan at the house. Ponder approached the residence at 11:00 a.m. to inquire about the odor and power usage, and as he walked from the driveway to the front door, he smelled a faint odor of marijuana from the garage door. When no one answered the door, he walked around the residence at which time he identified a "very strong odor of raw marijuana" from the garage area. At the back of the house, Ponder peered into the holes in the

7

window blinds and saw a couple of marijuana plants in plastic garbage bags. Following the attempted knock and talk, Henry County law enforcement made a traffic stop of the Chevrolet pickup truck after it had left 166 Alexander Drive, which resulted in a search uncovering items consistent with maintaining marijuana grow houses including heavy duty timers, buckets, hosing, and cell phones. The search also found a copy of Urban Garden magazine, describing how to grow marijuana and set up electricity for a marijuana growing operation.

### B.    *166 Alexander Drive*

Special Agent Ponder provided the following information in his search warrant affidavit for 166 Alexander Drive. (*See* Warrant Aff. in Doc. 238-1 at Exh. B). The November 3, 2010, search of the 925 Hemphill Road residence uncovered the cultivation of at least 121 plants of marijuana, leading to James McKenzie being charged with manufacturing marijuana. The search of paperwork indicated that 166 Alexander Drive was associated with 925 Hemphill Road. A records check showed that power was established by H. Autry, and that H. Autry was the landlord of the 925 Hemphill Road residence with McKenzie as the tenant. A search of 925 Hemphill Road uncovered a Smith and Wesson Club card with McKenzie's name and a Carnival cruise card with K. Autry's name on it. A search of local databases

AO 72A
(Rev.8/8
2)

indicated that K. Autry was associated with both the 925 Hemphill and 166 Alexander addresses.  The 925 Hemphill search also revealed a commercial lease agreement signed by McKenzie that listed his address as 166 Alexander Drive.

Surveillance placed McKenzie at the 166 Alexander Drive residence for 15 minutes before his traffic stop on November 3, which revealed items consistent with a marijuana growing operation and the Urban Garden magazine.  After entering the 925 Hemphill Road residence, Henry County law enforcement went to 166 Alexander Drive to speak with neighbors who advised that there was a lot of traffic in and out of the house and that the Autrys had numerous firearms in the residences, which in Ponder's experience is consistent with a home being used for drug distribution.  Finally, cars meeting the descriptions of the Autrys' cars (a Dodge Challenger and a white Jeep Cherokee) were seen at the 925 Hemphill Drive residence.

C.    *1396 Commerce Drive, Suites A and B, 2220 Jodeco Road, 445 Hood Road and 1828 Flat Rock Road*

Special Agent Ponder's search warrant affidavits for Suites A and B of 1396 Commerce Drive, for 2220 Jodeco Road, for 445 Hood Road and for 1828 Flat Rock Road provide the following information.  (*See* Warrant Affs. in Doc. 240 at Exhs. E, F; Warrant Affs. in Doc. 241 at Exhs. G, H ; Warrant Aff. in Doc. 242

9

at Exh. I).[3]  In May 2010, a confidential source ("CS") informed Henry County law enforcement that the CS overheard a conversation concerning McCullough between two people at Backwoods Bar and Grill, which is located at 2220 Jodeco Road.  The CS did not know the individuals, but the CS believed one was a regular guitarist at the bar.  The conversation revealed that McCullough was going to open a new gym, which was going to be "a very sophisticated gym," and that McCullough's "silent partner" was going to be Jimmy Ray.  The CS only knew three Jimmy Rays one of whom was Jimmy Ray Whorton who had jumped bond in 1982 when the CS was a bail bonds person.

A search of 925 Hemphill revealed a marijuana grow house.  After the search, McKenzie was arrested in a 2001 Chevrolet 1500 pick up truck and charged with marijuana manufacturing.  Henry County law enforcement learned that the truck was registered to JSCJ Manufacturing and Distribution ("JSCJ Manufacturing") in Sandra Whorton's name at the 1396 Commerce Drive address.  McKenzie advised that he was employed with Old South Amusement Incorporated ("Old South Amusement").

---

[3]     These averments relating to probable cause to search these addresses are materially the same, so the undersigned summarizes the allegations from these five affidavits together.

10

Ponder learned that McKenzie had worked at Old South Amusement with K. Autry following the search at 166 Alexander Drive, which also revealed a grow house.

Rebecca Harris owned JSCJ Manufacturing while S. Whorton was registered as the CEO, CFO and Secretary.  Harris also owned Old South Amusement, and S. Whorton served as the CEO, J. Whorton served as CFO, and Paul Bunch served as Secretary.  The Whortons lived at 1828 Flat Rock Road.

A records check of S. Whorton revealed that she had an active warrant for her arrest from Bexar County, Texas, for commercial gambling.  A records check of J. Whorton revealed that he was on probation and had a number of previous arrests in the 1970s for theft and assault, in the 1980s for drug possession and drug trafficking, and in the 1990s for marijuana possession with the intent to distribute and commercial gambling.  Henry County law enforcement was informed by Texas law enforcement that J. Whorton was found with $55,000 in U.S. currency and small amounts of narcotics.  Finally, Bunch had previous Georgia arrests for commercial gambling and fleeing or attempting to elude and Texas arrests from gambling.

A 2001 Isuzu truck registered to Preferred Amusements at 445 Hood Road, which did not have a valid Henry County Business Licensing Office, was seen at the 1680 Jodeco Road residence, which was under surveillance because of an anonymous

11

tip that it was a grow house.  The 445 Hood Road house is registered to Danielle McCullough, spouse of Joshua McCullough, and is Joshua McCullough's residence. Prior investigations into McCullough for illegal gambling determined that he had a financial interest in Old South Amusement and was a known associate of the Whortons. A car registered to the Whortons was seen at the 1686 Jodeco Road address.

On November 29, 2010, the 2001 Isuzu truck that was observed at the 1680 Jodeco Road grow house was seen at Backwoods Bar and Grill, whose registered agent was McCullough.

A December 8, 2010, search of the 1680 and 1686 Jodeco Road residences found a sophisticated marijuana cultivation operation similar to the ones at 925 Hemphill Road and 166 Alexander Drive.  The search uncovered several gaming machines set up to monitor the closed circuit security camera system, and these machines had labels indicating that they were owned by Old South Amusement and JSCJ Manufacturing. A box in the basement of the residence had a handwritten note on it, stating "For Josh," on it, which Ponder believed was referring to Josh McCullough.

Ponder believed that the above circumstances demonstrated that Old South Amusement, JSCJ Manufacturing, Backwoods Bar and Grill, and Preferred Amusements were funding the grow houses.  Ponder indicated that the grow houses

12

were not in operation long enough to provide sufficient funding and the cultivation processes were only in operation for two or three months and could not support themselves.  He also asserted that it was reasonable that records relating to financial activity would be kept at residences and that the businesses kept gambling machines at these residences.

D.     *436 Hood Road*

The search warrant affidavit by Special Agent Denise Romano provided the following allegations to support a search of the 436 Hood Road address.  (*See* Warrant Aff. in Doc. 243 at Exh. J).  During the search of Backwoods Bar and Grill, law enforcement located a purchase agreement for a residence at 436 Hood Road indicating that McCullough had purchased the property for $115,000.  Upon approaching the front door of the 436 Hood Road residence, Romano and Ponder noticed the overwhelming odor of raw marijuana.  They also noticed that a black plastic bag covered the windows on the garage.  When peering in the back door windows, Romano saw numerous five gallon buckets and a bucket "containing the same grow media" located at other grow houses.  Romano also noticed that the electricity meter was "cycling at a high rate of speed."

13

*E.    1850 Flat Rock Road*

Special Agent Ponder's search warrant affidavit provides the following allegations to support a search of the 1850 Flat Rock Road address. (*See* Warrant Aff. in Doc. 243 at Exh. K). The search of 436 Hood Road revealed several marijuana plants as well as paperwork identifying Bunch as the owner of the 436 Hood Road property. Special Agent Mike Dailey then traveled to 1850 Flat Rock Road. Dailey placed Bunch under arrest when he found Bunch next door at 1828 Flat Rock Road. After advising Bunch of his *Miranda* rights, Bunch informed Dailey that he did not live at 1828 Flat Rock Road but at the house next door and that he rented 436 Hood Road to a man named Ira. When Bunch assented to Dailey's request to see rental paperwork for the 436 Hood Road home, Bunch and Dailey entered the 1850 Flat Rock Road home to retrieve the rental paperwork. While in the home, Dailey observed numerous assault rifles and hand guns on the floor. He then stopped Bunch from getting the rental paperwork, and took him down stairs to the living room. Ponder then stated that Bunch was a key operator of Old South Amusement and had been linked to McCullough who was arrested for manufacturing marijuana while McKenzie and K. Autry were also linked to Old South Amusement and arrested for manufacturing

14

marijuana. Finally, Ponder indicated that based on his training and experience, drug dealers kept weapons in their residences to protect themselves.

### F.    McCullough's Wedding Ring

McCullough's motion provides the following factual allegations. On December 8, 2010, McCullough was detained during a search of 445 Hood Road, at which time he exercised his right to remain silent and requested that he not be questioned without an attorney present. [Doc. 197 ¶ 2]. On April 5, 2011, Henry County law enforcement and the United States Marshals executed an arrest warrant based on McCullough's federal indictment in this case. [*Id.* ¶ 1]. While McCullough was dressing, law enforcement questioned McCullough about the location of his wedding band, prompting McCullough to answer that he was unsure of its location. [*Id.* ¶ 3]. Law enforcement instructed McCullough to place his wedding band on his finger before being taken into custody, despite his protestations, and McCullough complied with this direction after locating the ring downstairs. [*Id.* ¶ 4].

### G.    McKenzie's Traffic Stop

The allegations in McKenzie's motion to suppress are as follows. On November 3, 2010, McKenzie was stopped by law enforcement while driving a pick-up truck. [Doc. 113 ¶ 1]. Following the stop, law enforcement searched the truck

15

allegedly with McKenzie's consent and located timers, planter pots, tubing material and a magazine about marijuana cultivation.  [*Id.* ¶¶ 2-3].

## III.   RELEVANT LAW

### A.   *Standing*[4]

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. Amend. IV.  To challenge a seizure as violating the Fourth Amendment, a defendant must have "standing," *i.e.*, a legitimate expectation of privacy in the premises.  *See United States v. Gonzalez*, 940 F.2d 1413, 1420 n.8 (11th Cir. 1991).  As a result, the Fourth Amendment protects an individual in those places where he can demonstrate a reasonable expectation of privacy against government intrusion. *See Katz v. United States*, 389 U.S. 347, 353 (1967).  Fourth Amendment rights are personal, and only individuals who actually enjoy the reasonable expectation of privacy may challenge the validity of a government search.  *Rakas v. Illinois*, 439 U.S. 128,

---

[4]       The undersigned recognizes that the Supreme Court disapproves of the use of the word "standing."  *See Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978); *see also United States v. Hawkins*, 681 F.2d 1343, 1344-45 (11th Cir. 1982).  However, the undersigned will use the word "standing" when referring to whether the defendant has an expectation of privacy because the parties have used this term and courts routinely use "standing" as "shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim."  *United States v. Daniel*, 982 F.2d 146, 149 n.2 (5th Cir. 1993).

AO 72A
(Rev.8/8
2)

133-34, 143 (1978); *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). That is, a defendant must establish both a subjective and an objective expectation of privacy. *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006); *United States v. Robinson*, 62 F.3d 1325, 1328 (11th Cir. 1995). The subjective prong is a factual inquiry, *United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir. 1987); *see also United States v. Jones*, 184 Fed. Appx. 943, 947 (11th Cir. 2006), and "requires that a person exhibit an actual expectation of privacy," *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quoting *Segura-Baltazar*, 448 F.3d at 1286). The objective prong is a question of law, *McKennon*, 814 F.2d at 1543, and "requires that the privacy expectation be one that society is prepared to recognize as reasonable," *King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quoting *Segura-Baltazar*, 448 F.3d at 1286).

Courts assess on a case-by-case basis the "standing" of a particular person to challenge an intrusion by government officials into an area over which that person lacked primary control. *Oliver v. United States,* 466 U.S. 170, 191 n.13 (1984). No one circumstance is talismanic to this inquiry. "While property ownership is clearly

17

a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of . . . [the] inquiry." *United States v. Salvucci*, 448 U.S. 83, 92 (1980) (citation omitted). Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises. *United States v. Pitt*, 717 F.2d 1334, 1337 (11th Cir. 1983); *United States v. Haydel*, 649 F.2d 1152, 1154-55 (5th Cir. Unit A Jul. 8, 1981).[5]  To have standing, the defendant bears the burden of showing a legitimate expectation of privacy in the area searched. *Harris*, 526 F.3d at 1338; *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997).

A court may deny a motion to suppress where there is "[n]o allegation of ownership or other legitimate expectation of privacy." *United States v. Richardson*, 764 F.2d 1514, 1526 (11th Cir. 1985).  Also, a hearing is not necessary "where a

---

[5]      The Eleventh Circuit has adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, rendered prior to October 1, 1981.  *See United States v. Todd*, 108 F.3d 1329, 1333 n.5 (11th Cir. 1997); *Limelight Productions, Inc., v. Limelite Studios, Inc.*, 60 F.3d 767, 769 n.1 (11th Cir. 1995).

18

defendant in a motion to suppress fails to allege facts that, if proved, would require the grant of relief." *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). Thus, "courts must determine whether a defendant has established standing to bring the motion to suppress by sufficiently alleging that he possessed a reasonable expectation of privacy in the area searched." *United States v. Thompson*, 171 Fed. Appx. 823, 827-28 (11th Cir. Mar. 27, 2006). This does not mean that a defendant must append a separate signed statement if a motion or brief signed by the defendant's attorney sufficiently alleges standing. *United States v. Ford*, 34 F.3d 992, 994-95 (11th Cir. 1994). Also, the Eleventh Circuit has allowed a defendant to rely on testimony or an inventory prepared by the government identifying property as belonging to the defendant. *United States v. Eyster*, 948 F.2d 1196, 1209 (11th Cir. 1991).[6]

---

[6]    The undersigned notes that the Seventh Circuit provides a defendant less leeway. That Court has held that a defendant may not establish a subjective expectation of privacy by relying on facts in a search warrant affidavit or testimony from a government witness because "without an affidavit or testimony from the defendant it is almost impossible to find a privacy interest because this interest depends, in part, on the defendant's subjective intent and his actions that manifest that intent." *See United States v. Ruth*, 65 F.3d 599, 604-05 (7th Cir. 1995). The Eleventh Circuit on the other hand has suggested that under proper circumstances, a warrant affidavit might provide evidence of standing. *See Thompson*, 171 Fed. Appx. at 828 (indicating under circumstances of the case that warrant affidavit did not establish standing).

AO 72A
(Rev.8/8
2)

A defendant may not establish standing by relying on the government's theory of the case. *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993); *United States v. McNeal*, 82 F. Supp. 2d 945, 950 (S.D. Ind. 2000); *see also Thompson*, 171 Fed. Appx. at 828 (concluding that motion to suppress relying on government contention that room was rented by defendant was insufficient to demonstrate standing to warrant an evidentiary hearing); *United States v. Henry*, No. 1:09-cr-522, 2010 WL 5559207, *4 (N.D. Ga. Dec. 7, 2010) (R&R *adopted by* 2011 WL 65762 (Jan. 7, 2011)) ("The Government correctly contends that Defendant cannot show standing simply through the contentions of Government agents or the theory of the Government's case.") (citing *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995)). Also, a defendant cannot rely on general or conclusory assertions to establish standing. *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000); *see also United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (holding that offer of conclusory statements was insufficient to establish standing); *United States v. Silouangkhoth*, No. 2:10-cr-821, 2011 WL 1549427, *2 (D. Utah, Apr. 21, 2011) (finding that defendant did not establish standing where he made "a conclusory allegation that he has [ ] an interest in, or control over, the property"). Instead, the motion must be "definite, specific, detailed, and nonconjectural." *Richardson*, 764 F.2d

20

at 1527.   Where the motion to suppress is wholly lacking in sufficient factual allegations to establish standing, a court need not hold an evidentiary hearing based on a promise to prove standing at the hearing.  *Cooper*, 203 F.3d at 1285.

B.    *Franks Hearing*

"Affidavits supporting [search] warrants are presumptively valid." *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009)); *see also Franks*, 438 U.S. at 171 ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.").   A defendant may challenge, however, a search warrant affidavit through a *Franks* hearing if he: (1) makes a substantial preliminary showing that the affidavit contains a deliberately false statement or a statement made with reckless disregard for the truth[7]; and (2) shows that the statement is material, *i.e.*, necessary for making a

---

[7]    To make this showing, "the defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant."  *See Franks*, 438 U.S. at 171-72.

21

probable cause finding.[8]  *Sarras*, 575 F.3d at 12 (citing *Kapordelis*, 569 F.3d at 1309, and *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  When a *Franks* hearing is held, a court will suppress evidence stemming from a search warrant when: (1) the defendant shows by a preponderance of evidence that the search warrant affidavit contains perjurious statements or statements made with a reckless disregard for the truth[9]; and (2) the search warrant no longer is supported by probable cause after setting aside the perjurious or reckless statement.  *See United States v. Novaton*, 271 F.3d 968, 986 (11th Cir. 2001).[10]

---

[8]      To determine whether a statement is material, the court will set aside material that is the subject of the alleged falsity or reckless disregard and examine whether the remaining content in the warrant affidavit supports a finding of probable cause.  If the affidavit still supports a probable cause finding, no hearing is necessary.  However, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  *Franks v. Delaware*, 438 U.S. at 171-72.

[9]      Additionally, "a government agent or instrumentality making deliberately or recklessly false statements to an affiant that cause the affiant, in turn, to innocently make false statements in an affidavit can trigger the misstatements to be stricken from the affidavit in determining probable cause."  *O'Ferrell v. United States*, 968 F. Supp. 1519, 1533 (M.D. Ala. 1997) (citing *Franks*, 438 U.S. at 163 n.6, and *United States v. Kirk*, 781 F.2d 1498, 1503 & n.5 (11th Cir. 1986)).

[10]      *Franks* also applies when the "misinformation" involves omissions from the affidavit " 'made intentionally or with a reckless disregard for the accuracy of the affidavit.' "  *Madiwale v. Savaaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)).  Intentional or reckless

AO 72A
(Rev.8/8
2)

C.    *Search Warrant*

The task of a magistrate issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The task of a reviewing court in examining a challenge to a search warrant is different. In determining whether a search warrant is supported by probable cause, a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the judge's decision to issue the warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) ("[R]eviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.").  When affidavits are attached to a warrant, courts consider the affiant's statements as well as the search warrant.  *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006).  In reviewing the probable cause determination, supporting affidavits should not be interpreted in a hypertechnical manner; rather, a realistic and commonsense approach

_____

omissions will invalidate a search warrant "only if the inclusion of the omitted facts would have prevented a finding of probable cause."  *Sarras*, 575 F.3d at 1218 (quoting *Kapordelis*, 569 F.3d at 1309).

AO 72A
(Rev.8/8
2)

should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations. *See Gates*, 462 U.S. at 236-37 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *Miller*, 24 F.3d at 1361. When it is difficult to determine whether a search warrant affidavit supports probable cause, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Upton*, 466 U.S. at 734 (quoting *Ventresca*, 380 U.S. at 109).

Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *See Kapordelis,* 569 F.3d at 1310. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" *Gates*, 462 U.S. at 232. Thus, the determination of probable cause based on an affidavit "does not lend itself to a prescribed set of rules," but instead uses a "flexible, common-sense standard." *Gates*, 462 U.S. at 240; *see also United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005) (noting that "while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form.").

24

"Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" *Kapordelis*, 569 F.3d at 1310 (quoting *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999)). Therefore, the affidavit should establish (1) a connection between the defendant and the residence to be searched; and (2) a link between the residence and the criminal activity. *Id.*

> D.      *Curtilage and Knock and Talk*

The Fourth Amendment protects the curtilage of a dwelling, *i.e.*, the area immediately surrounding the home that "extends the intimate activity associated with the 'sanctity of a man's home and the privacies of his life.'" *Oliver v. United States*, 466 U.S. 170, 178, 180 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). To determine if some area constitutes the curtilage of the home, the Supreme Court has identified four factors to consider: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is in an enclosure; (3) the nature of the uses for the area; and (4) the steps taken to protect the area from observation by passers-by. *United States v. Dunn*, 480 U.S. 294, 301 (1987). Although the curtilage is protected by the Fourth Amendment, this amendment "is not implicated by entry

25

upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*)); *see also United States v. Knight*, 451 F.2d 275, 278 (5th Cir. 1971). Thus, an officer may approach a house to perform a knock and talk unless the occupant orders him off the property or the officer does not intend to ask questions. *Taylor*, 458 F.3d at 1204. Also, courts have concluded that an officer may move to the rear of the house when no one answers the front door. *Hardesty v. Hamburg Tp.*, 461 F.3d 646, 654 (6th Cir. 2006) (joining Third, Fourth, Eighth, and Ninth Circuits in concluding that where police officers knocked on front door and received no answer, they could move to back door); *United States v. Anderson*, 552 F.2d 1296, 1300 (8th Cir. 1977), cited with approval by *Taylor*, 458 F.3d at 1205; *see also United States v. Gomez-Moreno*, 479 F.3d 350, 356 (5th Cir. 2007) (suggesting that in a reasonable knock and talk, officers who receive no answer at the front door might have knocked on the back door); *United States v. Hill*, --- F. Supp. 2d ----, 2011 WL 2222141, *1, 11 (M.D. Fla. June 8, 2011) (noting that in some circumstances officers may move to back door to conduct knock and talk). *But see Pena v. Porter*, 316 Fed. Appx. 303, 314 (4th Cir. Mar. 13, 2009)

26

(finding Fourth Amendment violation where officer moved to back of camper after no one answered front door where trailer was only 10 feet wide).

E.    *Leon Good Faith Exception*

The Supreme Court has established a "good faith" exception to the exclusionary rule to prevent suppression of the items found pursuant to a search warrant.  Under *United States v. Leon*, 468 U.S. 897, 913 (1984), the "good faith" exception to the rule requiring the suppression of evidence for violations of the Fourth Amendment keeps evidence from being suppressed when law enforcement officers obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause.  *See United States v. Gonzalez*,  969 F.2d 999, 1004 n.4 (11th Cir. 1992).  The Eleventh Circuit has held that courts may consider information outside the four corners of the search warrant affidavit to determine whether the officer acted in good faith in relying upon a warrant which might be invalid.  *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). Courts need not consider, however, such outside information.  *United States Robinson*, 336 F.3d 1293, 1297 & n.6 (11th Cir. 2003) (rejecting defendant's argument that the government must present information beyond the four corners of the affidavit to satisfy its burden under *Leon* and holding the government's burden can be met by reference to the facts stated in the affidavit).

27

Although an officer's good faith in relying on a warrant precludes a court from applying the exclusionary rule, the Supreme Court has found that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23. *Leon*'s good faith exception does not apply to the following situations: (1) where the magistrate in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient - - *i.e.,* in failing to particularize the place to be searched or the things to be seized - - that the executing officers cannot reasonably presume it to be valid. *Robinson*, 336 F.3d at 1296.

F.    *Warrantless Seizures*

1.    *Traffic Stop*

The Fourth Amendment protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. A traffic stop is "a seizure within the meaning of the Fourth Amendment," and is constitutional if it is

28

based on either probable cause or reasonable suspicion. *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)). "[W]hen a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause." *United States v. Myers*, 207 Fed. Appx. 985, 987, (11th Cir. Nov. 28, 2006) (quoting *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir. 1990)). To have probable cause to stop a vehicle, the totality of the circumstances must suggest to a reasonable officer that there is a fair probability that a particular vehicle is carrying contraband or evidence of a crime. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Chavez*, 534 F.3d 1338, 1343 (10th Cir. 2008) ("The police may stop a car if they have probable cause . . . to believe the car is carrying contraband."). Law enforcement similarly has probable cause to search a vehicle "when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Jolly*, 368 Fed. Appx. 17, 20 (11th Cir. Feb. 24, 2010) (quoting *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005)); *see also Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States*

29

*v. Ross*, 456 U.S. 798, 820-21 . . . (1982), authorizes a [warrantless] search of any area of the vehicle in which the evidence might be found."). "Probable cause must be supported by more than a mere suspicion, but does not require the same 'standard of conclusiveness and probability as the facts necessary to support a conviction.' " *United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1334 (N.D. Ga. 2009) (Thrash, J., adopting Vineyard, M.J.) (quoting *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003)).

> 2.   *Arrest*

An arrest qualifies as a seizure under the Fourth Amendment, so it must be reasonable. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Courts must look to whether an arrest is objectively justified without examining the motives of an arresting officer. *Id.* at 2083. A warrantless arrest for crimes committed in the presence of an arresting officer is reasonable under the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Such an arrest is also appropriate "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

*G.    Statements*

    *1.    Jackson v. Denno*

"[W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (quoting *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)).  "A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions. . . ."  *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (quoting *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted)).  In the context of a *Jackson v. Denno* hearing request, a defendant he must allege facts which would, if proven true, indicate the involuntariness of his confession.  *Procunier v. Atchley*, 400 U.S. 446, 451 (1971); *United States v. Davidson*, 768 F.2d 1266, 1270 (11th Cir. 1985); *Martinez v. Estelle*, 612 F.2d 173, 180 (5th Cir. 1980).

31

2.      *Miranda*

The Fifth Amendment of the United States Constitution provides in relevant part that, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  The Supreme Court's decision *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny "govern the admissibility of statements made during custodial interrogation in . . . federal courts." *Dickerson v. United States*, 530 U.S. 428, 431 (2000). *Miranda* requires "that certain warnings [ ] be given before a suspect's statement made during custodial interrogation [can] be admitted in evidence." *Id.* at 431-32. Specifically, law enforcement must fully apprise the suspect prior to the initiation of questioning of (1) the government's intention to use his statements to secure a conviction (2) his rights to remain silent and (3) to "have counsel present . . . if [he] so desires." *Miranda*, 384 U.S. at 468-70.

These "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."[11] *Rhode Island v.*

---

[11]      "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301 (emphasis in original). As a result, spontaneous and voluntary statements not made in response to any government questioning are not covered, or required to be excluded, by *Miranda*. *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991); *United States v. Suggs*, 755 F.2d 1538, 1542 (11th Cir. 1985); *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977) (*Miranda*

32

*Innis*, 446 U.S. 291, 300-301 (1980); *see also Pennsylvania v. Muniz*, 496 U.S. 582, 600 (1990); *Arizona v. Mauro*, 481 U.S. 520, 526 (1987).  The defendant bears the burden of demonstrating that he was in custody.  *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).   The test for whether a person is in custody is whether the suspect is " 'subjected to restraints comparable to those associated with a formal arrest.' "  *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)).  The "custody" inquiry is an objective one , that is, it is viewed from the perspective of the reasonable innocent person.  *Florida v. Bostick*, 501 U.S. 429, 437-38 (1991); *United States v. Maya*, 74 F.3d 1117, 1119 (11th Cir. 1996).

Once the defendant demonstrates that he was in custody, statements in response to custodial interrogation will be admitted if the government proves that the defendant knowingly, voluntarily, and intelligently waives his *Miranda* rights.  *See United States v. Walton*, 323 Fed. Appx. 837, 841 (11th Cir. Apr. 22, 2009) (citing *United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996)).  To determine whether the *Miranda* waiver

---

does not cover situations "where the statements were unsolicited, spontaneous and freely made prior to any attempted interrogation"); *United States v. Hicks*, 546 F. Supp. 2d 1378, 1381 (N.D. Ga. 2008) (Thrash, J., adopting R&R of Vineyard, M.J.).

AO 72A
(Rev.8/8
2)

was knowing, intelligent, and voluntary, courts engage in a two-part inquiry. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). First, courts determine whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, courts determine if the waiver is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran*, 475 U.S. at 421). Courts examine the totality of circumstances surrounding the interrogation to determine if the *Miranda* rights were properly waived. *Id.*; *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003). This totality of the circumstances test directs the Court ultimately to determine whether a defendant's statement was the product of "an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir. 1989). Among the factors the Court must consider are the defendant's age, intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police. *See, e.g., J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2399, 2408 (2011); *Bustamonte,* 412 U.S. at 226; *United States v. Gonzalez,* 71 F.3d 819, 828 (11th Cir. 1996). However, while the

34

Eleventh Circuit has "enumerated a number of (non-exclusive) factors that may bear on the issue of voluntariness, the absence of official coercion is a *sine qua non* of effective consent. . . ." *Gonzalez*, 71 F.3d at 828 (citations omitted).[12]

> 3.      *Sixth Amendment*

The Sixth Amendment of the United States Constitution provides in relevant part that, "In all criminal prosecutions, the accused shall enjoy . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.  This Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment,

---

[12]      The Supreme Court has indicated that the *Miranda* case did not supplant its cases examining the voluntariness of confessions during police interrogation. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000) (noting that the court has never abandoned its inquiry into whether a defendant's will was overborne by the circumstances and "thus continue to exclude confessions that were obtained involuntarily").  Thus, the Court has "not suggest[ed] that compliance with *Miranda* conclusively establishes the voluntariness of a subsequent confession." *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984).  "The Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial." *United States v. Thompson*, 422 F.3d 1285, 1296 (11th Cir. 2005).  The voluntariness analysis focuses " 'on whether the defendant was coerced by the government into making the statement . . .,' " *Id.* at 1295 (quoting *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992)), *i.e.*, whether "the police overreached," *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010).  Courts must consider the totality of the circumstances to determine whether police conduct was causally related to the confession. *Id.*

information, or arraignment.' " *Fellers v. United States*, 540 U.S. 519, 523 (2004).

Thus, a criminal defendant has the right to counsel at all critical stages of criminal

proceedings, which includes interrogation by the government. *Montejo v. Louisiana*,

129 S. Ct. 2079, 2085 (2009) (citing *Massiah v. United States*, 377 U.S. 201, 204-05

(1964)).  This Sixth Amendment right is, however, offense specific, so that the Sixth

Amendment right to counsel does not also attach to uncharged offenses that are

factually related to the charged offense. *Texas v. Cobb*, 532 U.S. 162, 165, 168 (2001).

A violation of the Sixth Amendment right occurs when a defendant's incriminating

statements are used against him at trial and when these statements were deliberately

elicited from him following indictment and in the absence of counsel. *Fellers*, 540 U.S.

at 523.

The Sixth Amendment right to counsel may be waived, however, "so long as

relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, 129 S. Ct.

at 2085.  "The defendant may waive the right whether or not he is already represented

by counsel; the decision to waive need not be counseled." *Id.*  The waiver may be

effectuated by apprising the defendant of his *Miranda* rights because the *Miranda*

warnings inform the defendant of his right to counsel during questioning and apprise

him of the consequences of waiving his rights. *Patterson v. Illinois*, 487 U.S. 285, 293

36

(1988).   A waiver may no longer be presumed invalid when the defendant has previously invoked this right to counsel. *Montejo*, 129 S. Ct. at 2086, 2091 (overruling *Michigan v. Jackson*, 475 U.S. 625 (1986), which had prohibited law enforcement from initiating an interrogation of a criminal defendant once he had requested counsel).   If there is no valid waiver, "[t]he penalty for violation of this Sixth Amendment right is suppression of the accused's incriminating statements." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1216 (11th Cir. 2009).

## IV.   ANALYSIS

### A.   *925 Hemphill Road*

#### 1.   *Parties' Arguments*

McKenzie, H. Autry, and K. Autry all challenge the search of the 925 Hemphill Road address.   [*See* Docs. 112 (McKenzie), 200 (H. Autry), 249 (H. Autry), 227 (K. Autry), 307, 316 (McKenzie)[13]].   McKenzie asserts that the evidence seized from the search of the 925 Hemphill Road address should be suppressed.   [Doc. 112].

---

[13]      The Court permitted K. Autry and McKenzie to adopt H. Autry's motion to suppress evidence found at the 925 Hemphill Road address.   [*See* Dkt. Entries dated 5/17/2011 (K. Autry) and 7/27/2011 (McKenzie)].   Documents 227 and 307 therefore constitute H. Autry's motion to suppress that K. Autry and McKenzie adopted.   As a result, the undersigned's citations to H. Autry's brief at Document 200 will also constitute a summary of the arguments in Documents 227 and 307.

He contends that he "maintained a privacy interest in the premises."  [*Id.* at 1]. McKenzie then argues that the search warrant did not provide probable cause for the search because the warrant provided minimal information about McKenzie and did not establish that items sought were located within McKenzie's home.  [*Id.* at 2]. McKenzie also argues that the warrant was overly broad and not otherwise reasonable. [*Id.* at 3].

H. Autry, K. Autry, and McKenzie then assert that at the forthcoming evidentiary hearing, it will be established that H. Autry is the owner of the property at 925 Hemphill Road.  [Doc. 200 at 2].  They then argue that Ponder's entry onto the 925 Hemphill property was not for a knock and talk but instead was for a search because he waited for the occupants to leave before approaching.  [*Id.* at 6].  Even assuming that the initial entry was for a knock and talk, the defendants contend that the entry into the back yard exceeded the permissible scope of a knock and talk because Ponder needed to bypass a metal gate to enter into the enclosed back yard.  [*Id.* at 7].

The government initially argues that McKenzie did not have standing because his general statement about maintaining a privacy interest is insufficient. [Doc. 236 at 35].  The government also contends that the other co-defendants do not have standing because they failed to specifically articulate facts to establish a privacy

38

interest.  [*Id.*].  It then asserts that even if McKenzie had standing, the search warrant affidavits established probable cause because: (1) the electric company alerted law enforcement of a possible grow house; (2) the home's electrical use was consistent with a grow house; (3) an agent smelled marijuana down from the home and heard a fan or blower; and (4) another agent smelled marijuana from the garage as he approached to ask about the odor and power usage.  [*Id.* at 38].  The government asserts that to the extent that information was obtained upon entry into the protected curtilage of the home, this information was not necessary to establish probable cause and did not necessarily violate Fourth Amendment rights because law enforcement may knock on a residence's door to speak with inhabitants.  [*Id.* at 40].  The government also defends the walking around the residence as being consistent with the attempt to speak with inhabitants.  [*Id.*].

In his reply brief, McKenzie first argues that the facts in the affidavit and the government's response brief indicate that McKenzie has standing to challenge the search without actually identifying what information establishes standing.  [Doc. 260 at 1].  He then contends that the officers' entry into the curtilage violated the Fourth Amendment because its primary purpose was to conduct a search, not to conduct a knock and talk, as demonstrated by Agent Ponder's peering into

windows covered by blinds and failure to knock on the garage door where music was playing. [*Id.* at 4].

Before filing a reply brief, H. Autry filed a supplemental motion to suppress arguing that Ponder's affidavit contained false statements or statements in reckless disregard of the truth that were the linchpin for establishing probable cause. [Doc. 249 at 3].[14] Specifically, H. Autry argues that it was not possible to smell a strong odor of raw marijuana coming from the house while standing downwind from the property based on the opinion of a retired high school physics teacher who believed that the garage was well sealed and ventilated and the wind was blowing in the wrong direction to allow the officer to smell marijuana. [*Id.* at 4, 5; Quail Aff. in Doc. 249 at Exh. A]. She therefore requests an evidentiary hearing pursuant to *Franks v. Delaware*. [*Id.* at 5].

H. Autry in her reply brief argues that she has standing because the government admits that she is the owner of and landlord for the 925 Hemphill Road home, and this ownership was used in the affidavit to support a search of the 166 Alexander Drive residence. [Doc. 256 at 2]. She next argues that there was no probable cause to search the 925 Hemphill Road home because the government has not cited to a case indicating

---

[14]     McKenzie adopted this motion. [*See* Doc. 316].

AO 72A
(Rev.8/8
2)

that high electricity usage and the odor of marijuana creates probable cause to search. [*Id.* at 5-6].  She also reiterates that the statement about the odor of raw marijuana was false and should not be considered for the probable cause determination.  [*Id.* at 6].  Finally, she asserts that the entry on the property was a pretext to conduct a warrantless search.  [*Id.*].

The government responds to H. Autry's supplemental motion to dismiss by arguing that the retired physics teachers examination in June 2011 of the Hemphill property does not establish that it was impossible for the officer to smell marijuana in November 2010 and does not necessitate a *Franks* hearing.  [Doc. 276 at 4, 6-7].  It then argues that even if the statement about smelling marijuana downwind were excluded, there was still probable cause to search based on the electricity usage and Ponder's smelling of marijuana from the garage door while walking to the front door. [Doc. 276 at 4-5].  The government further argues that Ponder's detection of a marijuana odor while walking to the back of the house can also be considered in the probable cause analysis.  [*Id.* at 5 (citing *United States v. Hill*, No. 2:10-cr-127, --- F. Supp. 2d ----, 2011 WL 2222141 (M.D. Fla. June 8, 2011)]. The government observes that the smell of marijuana supplies probable cause for a warrantless search under various circumstances, so there was probable cause to search

41

the Hemphill residence.  [*Id.* at 6].  Finally, the government contends that there is nothing alleged that the agents did not reasonably rely on good faith in executing the search warrant.  [*Id.* at 7].

> 2. *Discussion*
>
>> a. *Standing*

The undersigned concludes that McKenzie, H. Autry, and K. Autry have not established standing to contest the search of 925 Hemphill.  As for K. Autry's standing, his decision to merely adopt the motions by his wife, H. Autry, does not provide any facts or allegations to meet his burden that he had a subjective expectation of privacy in the property.  Even assuming that H. Autry was the landlord and owner of the property, these facts and K. Autry's status as her husband do not demonstrate that K. Autry had any expectation of privacy in the Hemphill home.  *Cf. United States v. Metzger*, 778 F.2d 1195, 1200 (6th Cir. 1985) ("We fail to see how defendant ... had a reasonable expectation of privacy in his wife's personal vehicle."); *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (finding that husband did not demonstrate that he had standing to challenge search of his wife's purse).  K. Autry has also not filed a reply or supplemental brief to establish standing to contest the search of the Hemphill address, so the undersigned concludes that K. Autry has not provided

42

allegations to establish standing. *See United States v. Leiva-Portillo*, No. 1:06-cr-350-WSD, 2007 WL 1706351, *1 n.2, *9 (N.D. Ga. June 12, 2007) (concluding that defendant did not establish standing where motion did not refer to defendant's expectation of privacy or identify any relationship between defendant and the place searched and the defendant did not file a reply brief to respond to government's standing argument).

H. Autry also does not have standing to contest the search.  H. Autry's initial motion is insufficient to establish standing in that it only states that she can establish standing at a forthcoming evidentiary hearing.  No evidentiary hearing was scheduled at the time of her motion, so reliance on a forthcoming evidentiary hearing did not establish standing.  At any rate, this statement is not "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that" H. Autry can establish standing.  *See Cooper*, 203 F.3d at 1284.  However, H. Autry has attempted to rehabilitate her showing in her reply brief by pointing to evidence from Ponder's warrant affidavit supporting the search of 166 Alexander and statements in the government's brief.  [*See* Doc. 256 at 2].  H. Autry cannot rely on the government's brief to establish standing because the government's theory of the case is inapplicable. *See Singleton*, 987 F.2d at 1449.

43

As for Ponder's warrant affidavit, it indicates that H. Autry was the landlord and property owner for 925 Hemphill Road.  (*See* Warrant Aff. at 3 in Doc. 238 at Exh. B). This fact alone does not establish standing as courts have concluded that the defendant's status as the owner and landlord of a property "does not by itself justify a reasonable expectation of privacy." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544-45 (6th Cir. 2003); *United States v. Cruz*, 475 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) (concluding that although the defendant was the landlord of property, "his tenants, not the defendant, had an expectation of privacy in their leased premises," so "it was incumbent on [the defendant] to demonstrate that, in spite of the fact that he had leased the premises to others, he took some affirmative steps to maintain a privacy interest" in them); *United States v. Knox*, Nos. 02-3385, 03-3080, 01-40017, 2005 WL 1259633, *8 (D. Kan. May 27, 2005) ("It follows that a landlord lacks standing to assert a Fourth Amendment claim as to residential property leased to another.") (citing *United States v. Rios*, 611 F.2d 1335, 1345 (10th Cir. 1979)); *United States v. Montefiore*, No. Crim. A. 97-105, 1998 WL 188849, *3 (E.D. Pa. Apr. 22, 1998); LaFave, 6 Search & Seizure § 11.3 & n.36 (4th ed.) ("[I]f the owner of certain premises has leased them to another without reserving any right of possession to himself, then it cannot be said that a police intrusion into those premises encroaches upon his

44

expectation of privacy."). H. Autry's status as owner and landlord of the 925 Hemphill home therefore does not establish standing.

Finally, McKenzie's motion does not establish standing to challenge the search of the Hemphill home. The extent of the standing showing in McKenzie's motion is the following statement: "Mr. McKenzie maintained a privacy interest in the premises at the [Hemphill] address." [Doc. 112 at 1]. This conclusory statement is clearly insufficient for McKenzie to meet his burden. *See Cooper*, 203 F.3d at 1284.[15] Although on notice that the government was challenging his standing, McKenzie did not correct his showing in his reply brief because he merely states without elaboration that the facts set forth in the warrant affidavit supporting the search of the Hemphill residence, he had standing. [Doc. 260 at 1]. This is conclusory, and the Court is under no obligation to scour the affidavit to identify statements that might support his claim for standing and argue on his behalf why these statements support standing. *See United States v. Murdock*, No. 4:10-cr-160, 2010 WL 5538514, *4 n.10 (S.D. Ga. Dec. 17, 2010). As a result, the undersigned concludes that McKenzie provided insufficient allegations to establish standing. *See id.*

---

[15]   The Court gave McKenzie until May 5, 2011, to supplement his motions, [Doc. 169], but he opted not to supplement his motions, including the motion to suppress, [*see* Dkt.].

45

Based on the above discussion, the undersigned concludes that McKenzie, H. Autry, and K. Autry failed to meet their burden of establishing standing to contest the search of the Hemphill residence. Accordingly, their motions to suppress should be denied. In the event that the District Court disagrees, the undersigned examines whether the substantial evidence supports the magistrate's decision to issue the search warrant for the Hemphill home.

### b.      Probable Cause

The undersigned concludes that the warrant contained substantial evidence of probable cause to search the 925 Hemphill Drive residence. The affidavit indicated that the electric company notified Henry County law enforcement that 925 Hemphill Drive was a possible grow house based on its high electricity consumption. Also, during November 3, 2010, surveillance, Officer Warr smelled the odor of marijuana coming from the home. Given these two factors - - high energy consumption consistent with a grow house and an odor of marijuana emanating from the premises - - there was probable cause to believe that evidence of contraband, namely a marijuana growing operation, would be found in the house. *See United States v. Viers*, 251 Fed. Appx. 381, 385 (9th Cir. Oct. 10, 2007) (finding probable cause to search where resident had felony conviction for marijuana delivery/manufacture, there was a smell of marijuana

46

from the home, the home had higher electric bills than previous tenant or what would be expected in a home of that size, and utility bills were paid in cash); *United States v. Underwood*, No. 8:11-cr-95, 2011 WL 2036498, *2 (M.D. Fla. May 24, 2011) (finding probable cause where, *inter alia*, there was the odor of fresh marijuana and there was excessive use of electrical power for homes of comparable size). The probable cause finding was further strengthened when Ponder approached the home to perform a knock and talk and smelled the odor of marijuana from the garage. *See United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*) (concluding that probable cause existed where officer detected odor of marijuana); *United States v. Correa*, 347 Fed. Appx. 541, 545 (11th Cir. Oct. 2, 2009) (holding that agents were permitted to approach house to verify or dispel suspicions of marijuana being grown at houses and that marijuana smell emanating from inside the homes provided probable cause to request search warrants); *cf. United States v. Smalls*, 617 F. Supp. 2d 1240, 1253 n.10 (S.D. Fla. 2008) ("[P]robable cause was established by the odor of marijuana emanating from the apartment[.]"). Given these statements in the warrant affidavit, there was substantial evidence to support the Henry County magistrate judge's probable cause determination.

As for the defendants' arguments to the contrary, the undersigned is unpersuaded. First, that the warrant provided minimal information about McKenzie

47

does not refute the determination that there was probable cause to believe that the Hemphill home contained marijuana.  Second, the items sought by the search warrant - - marijuana, paraphernalia, marijuana growing equipment, packaging material, scales or measuring devices, currency , ledgers, paperwork concerning ownership or rental of Hemphill property, firearms, surveillance equipment, and cell phones - - were related to the object of the search and reasonably could be in the home.  (*See* Search Warrant in Doc. 238 at Exh. A).   Third, the warrant was not overly broad or otherwise unreasonable given that it provided sufficient facts to establish probable cause to search and that it sought items related to the suspected marijuana growing activities.

Fourth, the affidavit does not indicate that the knock and talk was pretextual or that Ponder exceeded the scope of a knock and talk.  At the time Ponder decided to approach the house, law enforcement knew that the house had high energy consumption consistent with a grow house and that there was a marijuana odor from the home, so Ponder was allowed to approach the home to conduct a knock and talk.  *Tobin*, 923 F.2d at 1512.  H. Autry complains that Ponder waited until after the occupants of the Hemphill home left to conduct the knock and talk, but the affidavit explicitly states that Ponder went to the residence for the express purpose of performing a knock and talk.  There is no evidence that he waited for the vehicles to leave.  The undersigned

48

recognizes that Officer Warr performed early morning surveillance during which he heard music and observed cars at the residence, but Warr did not perform the knock and talk. It was Ponder, so the affidavit does not support the defendants' contention that the knock and talk was a pretext for a search. McKenzie additionally complains that Ponder should have knocked on the garage door because music was playing, but there is no indication that the music was playing when Ponder approached the house at 11:00 a.m. Instead, Officer Warr heard music during the early morning surveillance, so Ponder was not obligated to try the garage before conducting a knock and talk at the front door.[16]

Based on the above discussion, the undersigned concludes that even if the defendants had established standing, they are not entitled to have the evidence from the Hemphill home suppressed because the warrant affidavit was supported by probable cause. Accordingly, the undersigned **RECOMMENDS** that H. Autry's, K. Autry's,

---

[16]     The defendants have also challenged the propriety of Ponder's decision to walk around to the back of the home and actions while at the back of the home after no one answered the front door. As discussed in the relevant law section of this R&R, courts have concluded that a knock and talk may extend to the back door under certain circumstances. *See* Part III.D., *supra*. Since the warrant is supported by probable cause without considering what transpired at the back of the Hemphill home, the undersigned does not address this argument.

49

and McKenzie's motions to suppress evidence from the Hemphill residence, [Docs. 112, 200, 227, 249, 307, 316], be **DENIED**.

c.      *Franks Hearing*

The defendants seek a *Franks* hearing because they assert that the following statement from Ponder's affidavit is false:

> During the [early morning] surveillance [on November 3, 2010,] Officer Warr was near the area of the house, not being on the property of 925 Hemphill Rd, but downwind of the residence, and smelled a strong odor of raw marijuana coming from the area of the house.

(*See* Warrant Aff. in Doc. 238 at Exh. A).  The undersigned concludes that a hearing is not warranted to determine whether this statement is false or recklessly disregards the truth.

First, the defendants have not shown by a preponderance of evidence that this statement is false.  In attempting to make this showing, the defendants have provided the affidavit testimony of a retired high school physics teacher who believes that it was impossible to smell any odor of marijuana from the Hemphill residence while standing off the property.  This opinion is based on the east-facing home, the "sealed" garage, the garage's "elaborate ventilation system" and the November 3, 2010, weather service reports showing that the wind was blowing from northeast to southwest.  This affidavit

50

does not establish why the teacher's knowledge of physics allows him to provide any expert testimony on the subjects of sealing, ventilation, wind, and odor detection. Also, as the government notes, the teacher's June 2011 review of events that transpired in November 2010 are not all that convincing. As a result, the undersigned concludes that the defendants have not shown by a preponderance of evidence that the warrant affidavit contains a false statement or one that is in reckless disregard of the truth.

Second, even with the statement excised from the affidavit, the undersigned concludes that a hearing is unwarranted because probable cause still existed to issue the warrant. The affidavit contains the statements about the high energy consumption, which is consistent with a grow house. Also, Ponder upon approaching the house smelled marijuana coming from the garage. These circumstances still establish probable cause that contraband would be found in the house and the garage. Accordingly, the undersigned concludes that a *Franks* hearing is unnecessary. *See Novaton*, 271 F.3d at 986 (noting that *Franks* hearing is warranted only where the search warrant no longer is supported by probable cause after setting aside the perjurious or reckless statement).

Accordingly, the undersigned **DENIES** the defendants' requests for a *Franks* hearing. [*See* Docs. 249, 316].

51

### B.      166 Alexander Drive

#### 1.      Parties' Arguments

The Autrys and McKenzie argue that the search warrant for the Alexander Drive residence was not supported by probable cause because the affidavit fails to connect the Alexander residence with the 925 Hemphill residence and fails to demonstrate that the residence would house the illegal activities. [Doc. 143 at 7-8].[17] These defendants also argue that the *Leon* good faith exception is inapplicable because there was not even a "scintilla" of evidence establishing that the Alexander residence was a depository of items for illegal activity at 925 Hemphill Road. [*Id.* at 9-10].

In a supplemental motion to suppress, the defendants argue that a *Franks* hearing is necessary because the warrant affidavit for the Alexander Drive search warrant contains a false statement, namely that an officer spoke with several neighbors who advised him that the Autrys had a number of firearms and that a lot of traffic was in and out of the house. [Doc. 230 at 3-4].[18]  The defendants assert that an independent

---

[17]      K. Autry and McKenzie were permitted to adopt H. Autry's motion to suppress, so they have filed the exact same motion as H. Autry, [*see* Doc. 226, 315]. The undersigned only cites to H. Autry's motion in summarizing the defendants' arguments.

[18]      McKenzie and K. Autry also were permitted to adopt this supplemental motion to suppress, [Docs. 247, 308], so the undersigned only cites from H. Autry's

AO 72A
(Rev.8/8
2)

investigation by H. Autry and her counsel discovered that no neighbor stated there was a lot of traffic at the house or that there were a number of firearms at the house. [*Id.* at 4].   Instead, the defendants note that this investigation revealed only one neighbor mentioning a number of cars to an officer on one occasion.  [*Id.*].  They then argue that a *Franks* hearing would demonstrate that the information was false and willfully omitted the context about the statement concerning traffic.  [*Id.* at 6-7].  They also assert that without these statements, there can be no finding of probable cause. [*Id.* at 7].

The government first argues that the Autrys have not established standing because they have failed to "specifically articulate facts proving their legitimate expectations of privacy."  [Doc. 236 at 35].  It then argues that even if the Autrys had established standing, the search of the Alexander residence was lawful because the warrant was supported by probable cause as demonstrated by: (1) the officers' confirmation that the Hemphill address was a grow house; (2) the officers' observation of McKenzie leaving 925 Hemphill and driving to the Alexander residence; (3) K. Autry's cruise line card being inside the Hemphill home; (4) a note suggesting that K. Autry and McKenzie were caretakers of the Hemphill home; (5) McKenzie

———————————————

motion in summarizing the parties' arguments.

AO 72A
(Rev.8/8
2)

having grow house material and a publication on growing marijuana after leaving the Alexander residence; and (6) a text message sent from K. Autry to McKenzie warning McKenzie of law enforcement's presence in the area. [*Id.* at 40-41]. The government then generally argues that even if certain information is excluded from the warrant affidavits, there was still probable cause because the homes had "fundamental characteristics of being marijuana grow houses." [*Id.* at 45-46].

H. Autry in reply argues that she has standing because the government admitted her ownership of the 166 Alexander Drive home given that this ownership was used in the warrant affidavit to support the search of this residence. [Doc. 256 at 2]. She also asserts that because she and her husband are the sole residents of the Alexander Drive home, she has sufficiently alleged standing. [*Id.*]. H. Autry asserts that the Alexander home did not have the fundamental characteristics of a grow home given that there was no evidence of high electricity usage, the odor of marijuana, or the use of fans. [*Id.* at 3]. She then argues that the fact that grow house materials were found in McKenzie's truck does not demonstrate that the Alexander home was a grow house because there is no mention that officers witnessed McKenzie placing materials in the truck after visiting the Alexander home. [*Id.* at 4]. H. Autry contends that the concept

54

of probable cause would be rendered meaningless if anyone associated with a marijuana grow house could have his or her home searched.  [*Id.* at 4-5].

       2.    *Discussion*

          a.    *Standing*

The undersigned concludes that K. Autry has not established standing to challenge the search of the Alexander Drive residence, but that McKenzie and H. Autry have shown standing.  As for K. Autry, the initial motion to suppress is silent on the issue of standing as it puts forth no basis for indicating that K. Autry (or H. Autry for that matter) has a legitimate privacy interest in the home.  Also, K. Autry's motion to adopt merely states that he "is similarly situated to co-Defendant Holly Autry (his wife) and he has standing to seek the relief requested in the motions sough to be adopted," [Doc. 145 at 2].  As such, these motions do not provide the court with "sufficiently definite, specific, detailed, and nonconjectural" information "to enable the court to conclude that a substantial claim is presented" concerning his standing to contest the search of the home. *See Cooper*, 203 F.3d at 1284.  K Autry has not made any attempt to rebut the government's argument relating to standing in a reply brief, so the undersigned concludes that he has not provided sufficient allegations to establish standing.

55

AO 72A
(Rev.8/8
2)

Although K. Autry's showing is deficient, the undersigned concludes that H. Autry and McKenzie have established standing for purposes of their motions to suppress. As for H. Autry, this conclusion is not based on allegations in the initial motion to suppress, which as discussed in the prior paragraph made no mention of standing or expectations of privacy. H. Autry's reply brief has provided sufficient allegations to demonstrate that she has standing. In this brief, H. Autry points to the warrant affidavit, which indicates that she set up the electrical service, and alleges that she is the owner and sole resident along with her husband of 166 Alexander. [Doc. 256 at 2]. Although ownership is not dispositive, it is a factor in evaluating whether an individual has an expectation of privacy. *See United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999). Here, H. Autry indicates not only that she was the owner, but that she resided at 166 Alexander, allegations consistent with the warrant affidavit. Given these circumstances, the undersigned concludes that H. Autry has established standing to challenge the search of 166 Alexander. *See United States v. Garcia*, 741 F.2d 363, 366 (11th Cir. 1984) (indicating that occupant of residence who is the owner has established an expectation of privacy); *United States v. Gramlich*, 551 F.2d 1359, 1363 (5th Cir. 1977) ("It is clear that [defendant] may legitimately complain since he was the owner of the house and materials seized.").

56

As for McKenzie, his adoption of H. Autry's motion to suppress does not establish standing because H. Autry's motion does not address the standing issue. [*See generally* Doc. 143]. McKenzie filed, however, his own motion in which he states that he kept a room inside the 166 Alexander residence where he stored his personal effects and a safe in which he kept personal items. He also alleges that H. Autry gave him access to her home and the use of the room. [Doc. 294 at 1]. The undersigned concludes that these allegations are sufficient because McKenzie has provided more than a bare statement to establish standing. *Cf. United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1341-42 (N.D. Ga. 2009) ("[M]erely occupying a residence or room overnight does not establish a reasonable expectation of privacy in that place for Fourth Amendment purposes."). McKenzie's motion suggests that he had a key to Alexander in that he had access to the home and the room. Also, the motion demonstrates that he kept personal items in the room and suggests that he stayed overnight in the room. For purposes of his motions, the undersigned concludes that McKenzie has offered sufficient allegations to demonstrate standing to challenge the search of 166 Alexander Drive. *See United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. July 8, 1981) (concluding defendant had standing to contest search of parents'

57

home where had a key, regularly resided, kept clothing, remained overnight, and could exclude guests).

### b.   Probable Cause

The undersigned concludes that substantial evidence supports the finding of probable cause to issue the warrant. The affidavit shows that the 925 Hemphill address was a marijuana grow house. It then indicates that the landlord, H. Autry, and her husband, K. Autry, resided at 166 Alexander Drive. Also, documents from Hemphill indicated that McKenzie, the tenant of the Hemphill home, listed the Alexander Drive home as his address. Thus, there was a connection between the two residences in that they shared a common owner and tenant. The warrant affidavit then provides allegations that McKenzie was not a rogue tenant violating terms of the lease by engaging in illegal activities. Instead, it suggests that the residents of 166 Alexander were involved. A membership card of K. Autry was found in the Hemphill home, and McKenzie was seen driving to the 166 Alexander Drive home on the day of the Alexander search. These circumstances alone may be innocuous, but the affidavit indicates that K. Autry alerted McKenzie to the presence of police, suggesting that the occupants of 166 Alexander Drive were involved with the marijuana grow house. Additionally, it is significant that McKenzie was associated with both the Hemphill

58

grow house and 166 Alexander.  Finally, the affidavit indicated that the home received visitors and contained firearms, which based on Ponder's knowledge was consistent with the home being used for drug purposes.  Given the connection between Hemphill and Alexander residences, the warning by K. Autry, and the statements by neighbors concerning traffic and firearms, the undersigned concludes that there was probable cause to search the 166 Alexander Drive residence because there were allegations beyond the mere association between the Autrys and McKenzie.

### c.      Franks

The defendants seek a *Franks* hearing based on the following statement:

> While at the residence of 166 Alexander Drive, Special Agent Warner spoke with several of the neighbors.  The neighbors advised him there is a lot of traffic in and out of the house . . .  Special Agent Warner also stated that they know the Autry's to have numerous firearms in their residence[.]

(Warrant Aff. at 4 in Doc. 238 at Exh. B).  The defendants assert that the statement is false because H. Autry's investigation revealed that no neighbor made these comments and provides affidavits from five neighbors in support.  [Doc. 230].  The defendants also assert that a material omission was made when law enforcement omitted a statement by one neighbor who informed officers that a number of vehicles were present on occasion for a cookout or festive occasion.  [*See* Doc. 230].

59

The undersigned concludes that a *Franks* hearing is unwarranted.  First, although H. Autry's investigator spoke with five of the Autrys' neighbors, it appears that the investigator was unable to speak with those from six other homes either because the home was vacant or no one was home.  (*See* Mulder Aff. ¶ 2 in Doc. 230).   Thus, the affidavit testimony of certain neighbors about not speaking with police does not make a substantial showing that the warrant affidavit's information about neighbors' statements was false because the investigator was unable to speak with six other neighbors.  Second, the omission from the affidavit about the Alexander home hosting parties on occasion would not invalidate the warrant because one neighbor's statements about a number of cars being present for parties is not relevant for probable cause.

The undersigned therefore concludes that a *Franks* hearing is unnecessary to establish whether the information in the warrant affidavit relating to 166 Alexander Drive is false or in reckless disregard for the truth.  Accordingly, the Court **DENIES** the request for a *Franks* hearing.  [*See* Doc. 230].

### d.    Leon

In the event that the District Court concludes that the warrant affidavit was insufficient to support a finding of probable cause, the undersigned alternatively concludes that the *Leon* good faith exception applies.  First, there is no indication that

AO 72A
(Rev.8/8
2)

the magistrate abandoned his judicial role. Second, the warrant affidavit is not so lacking in indicia of probable cause. As explained above, the affidavit established that the Hemphill home was a grow house, the landlord of the Hemphill house lived at the 166 Alexander home, the tenant of the grow house was associated with and visited the 166 Alexander home, the 166 Alexander home occupant warned McKenzie of the presence of police, and the 166 Alexander home had a lot of traffic and firearms, which was consistent with a home being used for drug distribution. With these allegations, this is not a warrant affidavit based on "a bare-bones statement with only conclusory allegations." *United States v. Gonzalez*, No. 1:09-cr-371 TWT/AJB, 2010 WL 2721882, *20 (N.D. Ga. May 25, 2010) (R&R *adopted by* 2010 WL 2721540 (July 7, 2010)). Third, the warrant was not facially deficient, as it described the home with particularity, provided detailed directions to the home, and identified the items to be seized. (*See* Search Warrant in Doc. 238 at Exh. B). *See id.* (noting that a warrant is facially deficient when, *inter alia*, it fails "to particularize the place to be searched or the things to be seized") (citing *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003)).

Finally, the undersigned concludes that the magistrate was not misled by information in the affidavit that the Ponder knew or should have known was false. As

discussed in relation to the *Franks* hearing request, the undersigned concludes that the evidence before the Court does not demonstrate that the information presented was false or in reckless disregard of the truth.   Based on the above discussion, the undersigned concludes that if the District Court finds that there is no probable cause to support the search of the 166 Alexander residence, the *Leon* good faith exception should apply.

Based on the above discussion, the undersigned concludes that the motions to suppress evidence from the 166 Alexander resident search should be denied. Accordingly, the undersigned **RECOMMENDS** that the motions to suppress evidence from the 166 Alexander Drive home, [Docs. 143, 226, 230, 247, 294, 308, 315], be **DENIED**.

### C.      436 Hood Road

#### 1.      Parties' Contentions

Bunch, Butler, and McCullough seek to suppress evidence from the search of the 436 Hood Road home.  [*See* Docs. 130, 146, 153-54, 196, 213].  Bunch's preliminary motion to suppress argues that the search of 436 Hood Road was invalid because: (1) the warrant was not supported by probable cause; (2) the warrant relied on information from individuals without establishing a basis for knowledge or indicia of

62

reliability; and (3) the warrant was a general warrant. [Doc. 146 at 2]. In a particularized motion, Bunch concedes that he is the owner of 436 Hood Road, giving him an expectation of privacy in the home and its curtilage. [Doc. 196 at 3].[19] He then argues that the Henry County officers' incursion into the curtilage of the property violated the Fourth Amendment because the purpose of the entry was to perform a search, not a knock and talk as evidenced by the use of a spotlight, the peering through the back door window, and the examination of the electric meter when walking around the house. [*Id.* at 4]. Bunch also asserts that the search of 436 Hood Road resulted from the illegal search of 2220 Jodeco Road. [*Id.*]. In making this argument, Bunch concedes that he does not have standing to challenge the search of 2220 Jodeco Road, but that McCullough does such that if the search of Jodeco Road is illegal, then the search of 436 Hood Road, which was triggered by an envelope found during the Jodeco Road search, was illegal. [*Id.* at 4-5]. Bunch further argues that the warrant was not issued by a neutral and detached judge because the judge traveled to 436 Hood Road to sign the warrant, the judge entered the curtilage to sign it, and this illegal incursion meant that the judge participated in the search. [*Id.* at 5]. Finally, Bunch argues that

---

[19]     Butler adopted the particularized motion to suppress by Bunch. [*See* Docs. 211 (granting oral motion to adopt), 213 (adopted motion to suppress)]. As a result, the undersigned's summary of Bunch's brief also summarizes Butler's brief.

the search warrant was not supported by probable cause when the information illegally obtained - - the purchase agreement from the 2220 Jodeco Road search and the search upon entering the curtilage - - is removed from the affidavit.  [*Id.*].

McCullough argues that the search warrant fails to establish probable cause to search because: (1) it contained minimal information about McCullough; (2) it provided no information to indicate that the items were located at the address; and (3) it was overly broad and otherwise unreasonable.  [Doc. 153 at 3-4].

The government generally responds that the defendants failed to establish standing because they did not articulate specific facts proving their expectations of privacy.  [Doc. 236 at 35].  The government seems to assert that Bunch's concession that he is the owner of the 436 Hood Road home is conclusory and insufficient by itself.  [*Id.*].  It then argues that even if the defendants had standing, probable cause supported the search warrant for the 436 Hood address because (1) plastic sheeting covered the garage door, and (2) there was an overwhelming smell of raw marijuana.  [*Id.* at 239].  The government contends that any information obtained from the back yard of the home was not necessary for probable cause, but at any rate, entry into the area did not violate the Fourth Amendment.  [*Id.* at 39-40].  Contrary to Bunch's suggestion, the government argues that there is no suggestion that the magistrate judge lost her

64

neutrality by signing the warrant at 436 Hood Road.   [*Id.* at 46].   Finally, the government argues that the search warrants were sufficiently specific.  [*Id.* at 47].

McCullough did not file a reply brief concerning the search of 436 Hood Road. [*See* Doc. 259 (responding to government's arguments relating to the searches of 445 Hood Road and 2220 Jodeco Road)].  Butler argues the following in reply.  [*See* Doc. 266].  First, he argues that the officers obtained their evidence while conducting an illegal search of the curtilage of the house.  [*Id.* at 9-11].  Second, the defendant argues that the intention of law enforcement in visiting the residence was to conduct a search within the curtilage, not to perform a knock and talk because: (1) there is no indication that the officers knocked on the front door; and (2) the officers went around the back of the house and peered through slits in the blinds.  [*Id.* at 11-12].

Bunch filed a reply brief in which he raised two primary arguments.  [Doc. 253]. First, he argues that he has standing by asserting that he is the owner and landlord of the property and pointing out that the government concedes this status.  [*Id.* at 5].  He then identifies other evidence relating to standing, including his receipt of mail at the residence, the lease agreement's terms giving Bunch the right to inspect, the right to maintain a key, the restriction of the lessee's use of the property, and his right to enter and inspect the property at all reasonable times.  [*Id.* at 6].  Second, Bunch argues that

the affidavit relied on evidence obtained from an illegal search of the curtilage because the entry was made to conduct a search as demonstrated by the officers' use of a spot light, deviation from the normal approach of the house by walking around its perimeter, walking past a side door to the back, climbing the stairs of the back deck, and peering through the blinds of the back door.  [*Id.* at 8-9 (relying on *United States v. Conrad*, 578 F. Supp. 2d 1016 (N.D. Ill. 2008))].  Bunch then argues that there was no rational basis for this conduct by arguing that: (1) the officers' behavior did not constitute a knock and talk because there is no indication that officer believed that Romano wanted to speak with the occupant; (2) there were no exigent circumstances; and (3) the officers were not conducting a protective sweep.  [*Id.* at 10-11].  Finally, Butler argues that the officers used the spot light to make observations while standing closely to the home.  [*Id.* at 11-12].

> 2.    *Discussion*
>
>> a.    *Standing*

The undersigned concludes that McCullough and Bunch have not established standing to challenge the search of 436 Hood Road, but that Butler has standing to challenge the search.  As for McCullough, his motions do not attempt to establish that he had a legitimate expectation of privacy in 436 Hood Road because his motions only

66

challenge whether there was probable cause to challenged the search.  [*See* Docs. 153-54].  His reply brief also fails to provide any arguments relating to the 436 Hood Road residence.  By failing to raise any allegations or provide any evidence of standing, the undersigned concludes that McCullough has not met his burden.  As a result, the undersigned concludes that McCullough has not demonstrated that he has standing to challenge the search of 436 Hood Road.

As for Bunch, his reliance on his status as owner and landlord of the 436 Hood Road property by itself does not establish standing.  [*See* Doc. 196 at 3; Doc. 253 at 5]. *See* Part IV.A.2.a., *supra* (discussing why H. Autry's status as owner and landlord was insufficient to establish standing by itself); *see also Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) ("A landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant."); LaFave, 6 Search & Seizure § 11.3(a) (4th ed.) ("[T]he mere fact of ownership standing alone will not necessarily suffice."). The undersigned recognizes that Bunch has attempted to buttress his standing argument with evidence that the lease between Bunch and Butler provided Bunch with the following right of access to 436 Hood Road: (1) a copy of the key to the residence (Lease ¶ 10 in Doc. 253-7 at 2 in Exh. G); (2) the right to inspect the property at all

67

reasonable times (*id.* ¶ 19 in Doc. 253-7 ¶ 19); and (3) the restriction of the lessee's use of the property, (*see id.* ¶¶ 8 (restricting number of occupants), 14 (prohibiting subletting without prior consent), 15 (prohibiting lessee from making changes to property without landlord's permission), 23 (requiring landlord's permission to have pets)).  These lease terms do not show, however, the Bunch had any expectation of privacy in the premises, as he did not maintain any right of possession of the 436 Hood Road home for himself.  *Langley v. Pernell*, No. 5:02-cv-269, 2004 WL 3334795, *2 (E.D.N.C. Oct. 6, 2004) ("The general rule is that a tenant, not the landlord, has the expectation of privacy in leased premises, unless the lessor has specifically reserved any rights of possession for himself."); *see also Miller v. Hassinger*, 173 Fed. Appx. 948, 952 (3d Cir. Apr. 6, 2006) (concluding that landlord did not have standing to contest search of property where he did not allege having access to the apartment, staying at the apartment, or maintaining personal items at the apartment); *Schneider v. County of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994) (finding landowner did not have standing where he did not live in the home); *Looney v. City of Wilmington, Del.*, 723 F. Supp. 1025, 1031 & n.9 (D. Del. 1989).  Also, there is no indication that Bunch used the home or ever resided at the home.  *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994) (holding that homeowner did not have standing to contest search where she was

68

not living at the home while another individual was living at the home); *United States v. Rios*, 611 F.2d 1335, 1345 (10th Cir. 1979) (finding mobile home owner did not have standing where he did not " 't[ake] normal precautions to maintain his privacy,' " (quoting *Rakas*, 439 U.S. at 152 (Powell, J., concurring)) or used the mobile home in such a way to raise an expectation of privacy); *Godshalk v. Borough of Bangor*, No. Civ.A. 03-1465, 2004 WL 999546, *10 (E.D. Pa. May 5, 2004) (finding no standing where party merely owned premises in which apartment was located but never resided in the apartment or used the apartment in any way to give an expectation of privacy).  As a result, the undersigned concludes that Bunch's ownership and status as a landlord does not establish that he has standing to challenge the search of the 436 Hood Road residence.[20]  As discussed below, the Court needs to hold an evidentiary hearing concerning the search warrant affidavit for 436 Hood Road, so the Court will provide Bunch with the opportunity to present additional evidence to establish standing as to 436 Hood Road at the forthcoming hearing.

While neither Bunch nor McCullough have demonstrated standing, the undersigned concludes that Butler has standing to challenge the search of the

_____

[20]    The undersigned might revisit this at a later stage in the proceedings if the government continues to object to Bunch's standing.

69

436 Hood Road address.  First, the government appeared to concede at the pretrial conference that Butler, as lessee of 436 Hood Road and the individual who set up the electric bill, had standing.  (*See* Pretrial Conf. Hrg. in FTR Gold at 2:24:14-2:24:42).  Second, even if the government did not concede Butler's standing to challenge the search, his counsel represented at the pretrial conference both that Butler was the lessee of the residence and the individual who set up the electricity and whose name was on the electric bill.   (*See id.* at 2:22:06-2:22:10, 2:24:43-2:24:53).   Given these representations by Butler's attorney,[21] the undersigned concludes that Butler has standing for the purposes of the instant motion to suppress. *See United States v. Ford*, 34 F.3d 992, 995 (11th Cir. 1994) (concluding defendant had standing where evidence

---

[21]      It appears that under Eleventh Circuit case law, a defendant may establish standing through allegations from his attorney.  *See Eyster*, 948 F.2d at 1209 (finding standing established at least in part through facts alleged in motion to suppress).  The undersigned has not found any case involving oral representations by an attorney's counsel, and he recognizes that the *Eyster* case involved a written brief, which the attorney signed.  However, the undersigned sees no reason why an attorney's oral representations in open court before the undersigned and government's counsel, who did not object to the factual allegations, should be treated differently.  Even if these representations are insufficient, the undersigned notes that the following evidence submitted with Bunch's reply brief demonstrates that Butler was the tenant at the time of the search: (1) the November 16, 2010, electric bill for 436 Hood Road addressed to Butler, (*see* Snapping Shoals Bill in Doc. 253-3 at Exh. C); and (2) November 1, 2010, residential lease indicating that Butler was lessee, (*see* Lease in Doc. 253-7 at Exh. G).

AO 72A
(Rev.8/8
2)

indicated that he had a leasehold in the property at the time of the search); LaFave, 6 Search & Seizure § 11.3 & n.30 (4th ed.) (noting that tenants at time of search have standing); *cf. United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997) (finding no standing to contest a search where defendant cited no evidence that he was the tenant or had an unrestricted right of occupancy or control).

*b.      Probable Cause*

The undersigned concludes that an evidentiary hearing is necessary to determine whether the search warrant was supported by probable cause.  As an initial matter, the undersigned concludes that taken on its face, the warrant affidavit establishes probable cause to search.  The warrant indicates that law enforcement found a link between McCullough and marijuana while searching the 445 Hood Road home belonging to McCullough in the form of marijuana seeds, a marijuana grinder, a pipe with marijuana residue, and a book about indoor growing of marijuana.  A search of McCullough's business indicated that McCullough was the owner of 436 Hood Road.  Thus, the warrant affidavit for 436 Hood Road links McCullough and this house.  The affidavit then indicates that upon approaching the front door of the 436 Hood Road home, the officers noticed an overwhelming smell of raw marijuana.  This evidence provides probable cause to search 436 Hood Road.  *See United States v. Correa*, 347 Fed. Appx.

71

541, 545 (11th Cir. Oct. 2, 2009) ("The marijuana that the agents smelled emanating from inside the houses provided probable cause to request and to issue the search warrants."); *United States v. Floyd*, 247 Fed. Appx. 161, 167 (11th Cir. July 12, 2007) (concluding that when officers smelled burning marijuana, they had probable cause); *cf. United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (noting that it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search").

The defendants assert three reasons why these allegations are insufficient to support a search of 436 Hood Road.  The undersigned rejects two of the defendants' reasons, but concludes that an issue arising from the warrant affidavit's recitation of facts concerning the knock and talk requires a hearing.   First, the undersigned concludes that Bunch and Butler cannot challenge the 436 Hood Road affidavit on the grounds that it references the fruits of the unlawful search at 2220 Jodeco Road.  Bunch and Butler concede they do not have standing to contest the search of the 2220 Jodeco Road address.  Given this concession, they cannot claim that information included in the warrant affidavit based on the Jodeco Road search invalidates the warrant for 436 Hood Road.  *See United States v. Baker*, 256 F.3d 855, 863 (9th Cir. 2001) (holding that because defendant did not have standing to challenge search of purse, the defendant

72

did not have standing to challenge validity of search warrant, which was based in part on evidence from the search of the purse) (citing *Dearinger v. Rhay*, 421 F.2d 1086, 1088 (9th Cir. 1970); *see also Rakas*, 439 U.S. at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); *United States v. Henderson*, 95 F. Supp. 2d 588, 594 (S.D. W. Va. 2000); LaFave, 6 Search & Seizure § 11.4 & n.18 (4th ed.) ("[I]t must be cautioned that a defendant, in any event, can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding the violation which constitutes the poisonous tree.") (footnote omitted).

Second, the defendants' argument that the magistrate was not neutral and detached is insufficient to question the magistrate's neutrality. "[A] warrant authorized by a neutral and detached judicial officer is 'a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer[.]" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979). Therefore, "[a] search warrant premised on a warrant issued by a magistrate who lacks neutrality and detachment stands on no firmer ground than if there had been no warrant at all." *United States v. Bowling*, 619 F.3d 1175, 1186 (10th Cir. 2010) (internal punctuation omitted) (quoting *United States v.*

73

*Ramirez*, 63 F.3d 937, 941 (10th Cir. 1995)).   The determination concerning the impartiality of the magistrate is an individualized and contextual inquiry based on the circumstances surrounding the execution of the warrant. *Id.* The defendants complain that the magistrate came to the 436 Hood Road residence and "[o]n information and belief," entered the curtilage to sign the warrant. [Doc. 196].  The undersigned is unconvinced that these circumstances demonstrate that the magistrate lacked the necessary neutrality.  The magistrate's presence at 436 Hood Road does not suggest that the magistrate abandoned her neutral and detached role.  *See Lo-Ji Sales, Inc.*, 442 U.S. at 328 n.6 ("We do not suggest, of course, that a 'neutral and detached magistrate' . . . loses his character as such merely because he leaves his regular office in order to make himself readily available to law enforcement officers who may wish to seek the issuance of warrants by him."); *United States v. Loy*, 569 F. Supp. 2d 601, 607 (N.D. W. Va. 2008) (finding magistrate's after-hours appearance at police station for receiving search warrant application did not render magistrate biased).  As for the allegation that the magistrate entered the curtilage, the defendants have no evidence of this and only base the statement on "information and belief."  Also, this allegation does not indicate that the magistrate engaged in a search or otherwise became part of the law enforcement investigation.  *Cf. Lo–Ji Sales*, 442 U.S. at 327 (finding town justice was

74

not impartial where objective facts showed that he became "a member, if not the leader, of the search party," he "conducted a generalized search," and he became "an adjunct law enforcement officer").

Although the magistrate-neutrality and poisoned-fruit arguments are unpersuasive, the undersigned concludes that a hearing is necessary to determine whether evidence from the knock and talk was properly included in the warrant. A district court will hold an evidentiary hearing if the defendant alleges facts that, if proved, would require the grant of relief. *See United States v. Horne*, 198 Fed. Appx. 865, 869-70 (11th Cir. Sept. 18, 2006) (quoting *Richardson*, 764 F.2d at 1527); *see also United States v. Serrano*, 209 Fed. Appx. 796, 799 (10th Cir. 2006) ("An evidentiary hearing is required only when a defendant meets his 'burden of showing that there are disputed issues of material fact.' "). A warrant affidavit cannot establish probable cause when it includes information that was obtained in violation of the Fourth Amendment, unless there is sufficient untainted evidence in the warrant affidavit to establish probable cause. *See United States v. Karo*, 468 U.S. 705, 719 (1984) ("[I]nformation [obtained in violation of the Fourth Amendment], which was included in the warrant affidavit, would also invalidate the warrant for the search of the house if it proved to be critical to establishing probable cause for the issuance of the warrant."); *United*

75

*States v. Trzaska*, 111 F.3d 1019, 1026 (2d Cir. 1997) ("Evidence seized during an illegal search should not be included in a [search] warrant affidavit.").

Here, the undersigned concludes that a hearing is necessary to determine whether the detection of marijuana odor was obtained during a lawful knock and talk or an unlawful search of the curtilage of 436 Hood Road.  Law enforcement may not enter the curtilage of a home to conduct a search without a warrant.  *See Dunn*, 480 U.S. at 300 (noting that the Fourth Amendment protects the curtilage); *United States v. Gerard*, 362 F.3d 484, 487 (8th Cir. 2004) ("The Fourth Amendment protects a home and its curtilage . . . from unreasonable warrantless searches."); *United States v. Garrott*, 745 F. Supp. 2d 1206, 1209 (M.D. Ala. 2010).  However, the knock and talk exception to the Fourth Amendment allows law enforcement to knock "on a citizen's door for legitimate police purposes unconnected with a search of the premises." *Taylor*, 458 F.3d at 1204.  An officer may approach a home if he has reasonable suspicion at the time and if he seeks to speak with the occupants to dispel the suspicion. *See Tobin*, 923 F.2d at 1512.  There is no violation of the Fourth Amendment if the plain view observations while properly on the property for" the purpose of a knock and talk.  *United States v. Cha*, Nos. 09-14916, 15042, 2011 WL 2438943, *5 (11th Cir. June 20, 2011).  However, for the knock and talk exception to apply, law enforcement

76

must "have the *honest intent* of asking questions of the occupant." *Taylor*, 458 F.3d at 1204 (emphasis added); *see also United States v. Del Val*, 223 Fed. Appx. 963, 965 (11th Cir. May 17, 2007) ("Accordingly, officers are allowed to approach a residence *intending* to speak with the inhabitants.").

The search warrant affidavit for 436 Hood Road does not demonstrate whether the officer's approach to the home was for a valid knock and talk or was to conduct a search. As the defendants argue, the circumstances outlined in the warrant could reasonably suggest that the knock and talk was performed to conduct a search based on the officers' use of the spot light, their decision to go around to the back of the residence, their decision to peer in the windows, and their decision to walk around the perimeter of the home. Also, the undersigned notes that the warrant affidavit indicates that the officers approached 436 Hood Road at dark immediately after finding McCullough's purchase agreement for the home, which could be construed either as an attempt to search or as an attempt to conduct a knock and talk. Further, there may be other factors not presented in the warrant affidavit indicating that the approach to the residence was for purposes of a knock and talk. The only way to resolve this disputed issue is to conduct an evidentiary hearing. *Cf. United States v. Quintana*, 594 F. Supp. 2d 1291, 1302 (M.D. Fla. 2009) (observing critical question of whether

77

law enforcement's approach of property was unconnected with a search of the premises was unanswered).  Accordingly, the undersigned **DEFERS** making a recommendation on the motions to suppress evidence from the 436 Hood Road house by Bunch and Butler until after an evidentiary hearing on this issue.  [*See* Docs. 130, 146, 196, 213].[22]

> D.     *1850 Flat Rock Road*

> 1.     *Parties' Contentions*

Bunch seeks to suppress evidence from the search of 1850 Flat Rock Road on a number of theories.  [*See* Docs. 147, 205].  First, he contends that his arrest was not supported by probable cause, so all evidence obtained following the arrest was fruit from the poisonous tree.  [Doc. 147 at 5, Doc. 205 at 6-9].  Bunch explains that there was no probable cause to arrest him because: (1) law enforcement learned that McCullough owned 436 Hood Road based on the purchase agreement found at 2220 Jodeco Road; (2) officers found a utility bill in Ira Butler's name; and (3) the good faith exception is inapplicable because no prior arrest warrant was authorized.

------------

[22]     The undersigned recognizes that McCullough also challenged the search of 436 Hood Road, [Docs. 153-54], but his preliminary motion did not attempt to even establish standing, provide any persuasive basis for suppressing evidence from 436 Hood Road, or raise arguments concerning the validity of the knock and talk.  As a result, the undersigned will **RECOMMEND** that McCullough's motion to suppress evidence from 436 Hood Road be **DENIED**.

AO 72A
(Rev.8/8
2)

[Doc. 205 at 6-8]. He also argues that the Court in making this probable cause analysis should not consider the following information in the affidavit: (1) the statement about him invoking his right to remain silent; and (2) the observation of firearms within the residence given the recent changes in the Second Amendment and the absence of any indicia of illegal activity. [Doc. 205 at 18-21]. Second, Bunch argues that his consent for law enforcement to enter the 1850 Flat Rock Road home was not voluntary. [Doc. 147 at 6-7]. Third, Bunch asserts that the warrant affidavit does not establish probable cause once the information relating to 436 Hood Road, Bunch's arrest, and the entry into the 1850 Flat Rock Road residence is excluded. [Doc. 147 at 7-8]. Fourth, Bunch argues that the warrant affidavit did not support probable cause to search for any items other than the firearms observed by law enforcement during the prior entry.[23] [Doc. 205 at 10-11]. Finally, Bunch seeks a *Franks* hearing because the

---

[23]     Bunch argues that the totality of the circumstances was insufficient to believe that the items sought in the warrant would be at 1850 Flat Rock Road. [Doc. 205 at 15]. He points to the following flaws in the first six paragraphs of the 1850 Flat Rock Road warrant affidavit: (1) the first paragraph fails to disclose that documents, namely a power bill in Butler's name and a tax bill sent to Scott and Nannette Bayer, suggested at least two other individuals owned 436 Hood Road; (2) the second and third paragraphs indicated that Bunch was arrested based on information that he was the owner of 436 Hood Road and referred to Bunch's invocation of the Fifth Amendment when asked about the cultivation of marijuana; (3) the affiant knew that there was no drug paraphernalia evidence due to the entry into the home and the protective sweep and there was no link between 1850 Flat Rock Road and the criminal

warrant affidavit contains false and misleading information in that: (1) it omitted information about other potential owners; (2) it failed to notify the magistrate that Bunch's statement about having a renter was consistent with the evidence; and (3) it did not advise the magistrate that the search of Old South Amusements uncovered no contraband.  [*Id.* at 11-16].

The government responds that there was ample evidence in the record justifying the arrest of Bunch based on his connection to 436 Hood Road and other coconspirators in the case, namely: (1) evidence indicated that 436 Hood Road was a grow house; (2) evidence, including Bunch's admission, indicated that he was the owner of the grow house; (3) there was documentation addressed to him found inside the grow house; and (4) Bunch was connected to Old South Amusements, which was used to support the grow house operations and was closely associated with his coconspirators.  [Doc. 236 at 33, 49-50].  Alternatively, the government argues that the agents lawfully detained him as they investigated and secured a search warrant and that Bunch's arrest was inevitable given the lawful execution of the warrant.  [*Id.* at 50].  It also argues that his

---

activity; (4) paragraph five vaguely links Bunch to criminal activity by describing him as a key operator of Old South Amusement and linked to other employees suspected of criminal activity; and (5) paragraph 6 is conclusory about the affiant's experience. [*Id.* at 11-15].

80

assertion of involuntariness based solely on his arrest is insufficient to establish that his consent was involuntary. [*Id.* at 33]. Also, the government argues that the warrant affidavit did not encourage the magistrate to draw improper conclusions and did not impermissibly refer to his right to own firearms given that they were commingled with a drug trafficking operation. [*Id.* at 46-47]. In Bunch's reply brief, he asserts that the government failed to acknowledge that law enforcement conducted two searches of 1850 Flat Rock Road: (1) a warrantless search following the unlawful, warrantless arrest of Bunch; and (2) a search secured by a warrant, which was based on illegally obtained evidence. [Doc. 253 at 1].

> *2.    Discussion*

Based on the parties' arguments, there are five issues concerning the search of 1850 Flat Rock Road: (1) whether Branch's arrest was supported by probable cause; (2) if not, whether the search of 1850 Flat Rock Road was fruit from the poisonous tree; (3) whether Branch's consent to enter the home was voluntary; (4) whether the warrant affidavit is supported by a probable cause determination (a) once unlawfully obtained evidence is excluded, and (b) to search for evidence other than firearms; and (5) whether a *Franks* hearing is needed. These issues are discussed separately.

81

a.      *Warrantless Arrest and Fruit from Poisonous Tree*

Law enforcement may perform a warrantless arrest in public places where an officer has probable cause to believe that a felony has occurred. *United States v. Epps*, 613 F.3d 1093, 1099 (11th Cir. 2010) (citing *Florida v. White*, 526 U.S. 559, 565 (1999)). "An arrest without a warrant is constitutionally valid if, at the moment the arrest was made, the officer had probable cause to make such an arrest," *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992), meaning that the "facts and circumstances within the knowledge of an arresting officer and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution [to believe] that an individual has committed a crime," *United States v. Kitowski*, 729 F.2d 1418, 1422 (11th Cir. 1984) (quoting *United States v. Long*, 674 F.2d 848, 853 (11th Cir. 1982)). However, "evidence seized after an illegal seizure should be suppressed as the 'fruit of the poisonous tree.' " *Epps*, 613 F.3d at 1099 (quoting *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002)).

The undersigned concludes that an evidentiary hearing is needed to determine whether probable cause supported the warrantless arrest of Bunch. It is not clear from the 1850 Flat Rock Road warrant affidavit why law enforcement had probable cause to arrest Bunch. The affidavit indicates that although Bunch owned the 436 Hood Road

82

home and this home was a grow house, a tenant - - Butler - - was residing at the Hood Road home.  As a result, the connection between Bunch and Hood Road does not then necessarily connect him with the marijuana growing operation.  Although the government points to Bunch's connection to Old South Amusements, it is not clear that this connection is sufficient to establish probable cause.  Since the Court has insufficient information to determine whether law enforcement had probable cause to arrest Bunch without a warrant,[24] the undersigned cannot address Bunch's fruit from the poisonous tree argument.[25]

### b.    Voluntariness of Consent

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Bashir v. Rockdale*

---

[24]    The undersigned is not persuaded by the government's alternative argument that law enforcement's detention was permitted while they secured the search warrant.  When armed with a search warrant, law enforcement may detain a homeowner while conducting a search.  *Michigan v. Summers*, 452 U.S. 692 (1981).  Here, the warrant affidavit indicates that law enforcement was not pursuing a search warrant of 1850 Flat Rock Road until after Officer Dailey had arrested Bunch and observed the firearms in the residence.

[25]    Bunch seeks to suppress statements on fruit-from-poison-tree grounds, but he has also filed a motion to suppress statements on Fifth and Sixth Amendment grounds.  [*See* Doc. 148].  The undersigned addresses the propriety of this request in the main text in Part IV.K.5 below.

83

AO 72A
(Rev.8/8
2)

*County, Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  An individual may provide consent for law enforcement to enter and search a home without a warrant.  *Id.* at 1328 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).  "For consent given after an illegal seizure to be valid, the Government must prove two things: that the consent is voluntary,[26] and that the consent was not a product of the illegal seizure.[27]"  *United States v. Santa*, 236 F.3d 662, 677 (11th Cir. 2000) (citing *United States v. Robinson*, 625 F.2d 1211, 1219 (5th Cir. 1980)).

The undersigned concludes that since Bunch challenges law enforcement's pre-warrant entry into the home, a hearing is needed to determine whether this entry was lawful.  If the arrest was unlawful, then the government must establish at the hearing

---

26      "Consent to conduct a search is voluntary if it is the product of an 'essentially free and unconstrained choice.' "  *United States v. Figueroa*, 419 Fed. Appx. 973, 977 (11th Cir. Mar. 31, 2011) (quoting *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001)).  An individual may provide implied consent where "the defendant's body language indicated his assent to the search."  *United States v. Chrispin*, 181 Fed. Appx. 935, 939 (11th Cir. May 26, 2006) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002)).

27      Courts examine the facts of each case to determine whether the consent is the product of free will, considering three factors: "the temporal proximity of the seizure and the consent, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct."  *Santa*, 236 F.3d at 677.

AO 72A
(Rev.8/8
2)

that the consent was voluntary and not a product of the illegal arrest.  *See Santa*, 236 F.3d at 677.  If the arrest was lawful, the government must still establish "the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).  As a result, the undersigned will hold an evidentiary hearing concerning the lawfulness of the government's pre-warrant entry into the 1850 Flat Rock Road home.

### c.      Probable Cause

The undersigned cannot determine whether the warrant is supported by probable cause at this time because an evidentiary hearing is needed to resolve two threshold issues, namely whether the warrantless arrest and pre-warrant entry into 1850 Flat Rock Road were lawful.  The outcome of these factual questions from the hearing will allow the Court to determine whether the warrant affidavit was supported by probable cause.  As a result, the undersigned defers deciding whether the warrant was supported by probable cause.

### d.      Franks Hearing

The undersigned concludes that a *Franks* hearing is not necessary.  The major issues concerning the viability of the warrant affidavit involve the warrantless arrest

85

and the warrantless entry. The omissions outlined in Bunch's motion do not warrant a hearing. First, it is unclear why informing the magistrate about Bunch's statement corroborating the evidence found at 436 Hood home would undermine the probable cause finding. Second, the omission that documents revealed the possibility of multiple owners is immaterial because the affidavit establishes that Bunch admitted to owning the 436 Hood Road home, so the silence as to the other possible owners is harmless. Third, the omission from the affidavit that the search of Old South Amusement did not reveal any contraband or evidence of marijuana does not require a *Franks* hearing because this information would not defeat probable cause, which is premised on Bunch's relationship to 436 Hood Road, the firearms found in the 1850 Flat Rock Road home, and his relationship with others arrested for marijuana distribution. As a result, the undersigned **DENIES** Bunch's request for a *Franks* hearing.

E.   *445 Hood Road*

1.   *Parties' Arguments*

McCullough argues that there was no probable cause to support a search of 445 Hood Road because the warrant contained minimal information about McCullough and no information that the items sought would probably be located in McCullough's home. [Doc. 155 at 4]. He next asserts that the warrant did not authorize the seizure

of firearms as the magistrate struck out provisions about firearms in the warrant affidavit.  [*Id.* at 5].

The government appears to argue that McCullough does not have standing to challenge the search of 445 Hood Road.  [Doc. 236 at 35 ("The other co-defendants fail to specifically articulate facts proving their legitimate expectations of privacy[.]")].  The government asserts that an Isuzu truck that was registered to Preferred Amusements at 445 Hood Road was seen outside of grow houses, and it was reasonable to expect documents and files related to Preferred Amusements at this location.  [*Id.* at 42 & n.8].  The government next argues that although the warrant may not have permitted the seizure of firearms, the circumstances of the search allowed for their seizure where agents found marijuana and marijuana cultivation during the search.  [*Id.* at 48].  Finally, the government argues that there was nothing to suggest that the agents did not reasonably rely in good faith on the validity of the warrant because it was not facially deficient or so lacking in indicia of probable cause and the magistrate did not abandon his judicial role.  [*Id.* at 51].

McCullough argues in reply that he has standing to challenge the search of the 445 Hood Road home because he resides at the home with his wife and children and the warrant affidavit describes the home as McCullough's residence and indicates that

87

it is owned by his wife.  [Doc. 259 at 5].  He then generally incorporates the arguments from his opening motion.  [*Id.*].

2.   *Discussion*

The parties' briefs raise four issues: (1) whether McCullough has standing to challenge the search of 445 Hood Road; (2) whether probable cause supports a search of this home; (3) whether a *Franks* hearing is warranted; and (4) whether law enforcement had a good faith belief that the warrant was valid.  The undersigned addresses each issue below.

a.   *Standing*

The undersigned concludes that McCullough has preliminarily established standing to challenge the search of the 445 Hood Road home.  Initially, the undersigned agrees with the government that the initial motion failed to establish standing because it was silent on whether McCullough had a legitimate expectation of privacy in 445 Hood Road.  However, McCullough's reply brief corrects the initial failure by asserting that 445 Hood Road was McCullough's residence with his wife and children and that his wife owned the residence.  [Doc. 259 at 5].  Although the allegation that his wife owns the home is insufficient, *see* Part IV.A.2.a, *supra*, McCullough's attorney has represented that McCullough resides at this home.  Given this living arrangement,

88

the undersigned concludes that McCullough has demonstrated standing to challenge the search of 445 Hood Road.  *See United States v. Watson*, 950 F.2d 505, 507 (8th Cir. 1991) (concluding that defendant had standing to challenge search of home where he resided at the house and had control over it); *United States v. Babwah*, 972 F.2d 30, 35 (2d Cir. 1992) ("[Defendant] has standing to challenge the search because he resided in the house that was searched."); *cf. United States v. Perry*, 379 Fed. Appx. 888, 895 (11th Cir. May 19, 2010) (concluding that defendant did not have standing to challenge search where defendant denied living at residence and was only storing couch in basement); *United States v. Reyes-Bosque*, 596 F.3d 1017, 1029 (9th Cir. 2010) (holding that defendant did not have standing in part where he never claimed to have lived at apartment).  The undersigned therefore turns to whether there was probable cause to support a search of 445 Hood Road.

### b.    *Probable Cause*

The undersigned concludes that the magistrate did not have a substantial basis to believe that there was probable cause to issue a search warrant for 445 Hood Road.  As best that the undersigned can determine, the evidence to support probable cause is: (1) an informant in May 2010 overheard that McCullough was going to open a "gym" in a few weeks; (2) the Isuzu truck registered to Preferred Amusements at 445 Hood

Road was seen outside of the 1680 Jodeco Road grow house and outside of McCullough's Backwoods Bar & Grill; (3) a box for "Josh" was found at the 1680 Jodeco Road grow house; (4) McCullough had a financial interest in Old South Amusement whose gaming machines were found at the Jodeco grow house; and (5) law enforcement believed that Old South Amusement and Backwoods Bar & Grill were financially supporting the grow houses.  These allegations do not suggest a fair probability that evidence of the sale, manufacture, or possession of marijuana would be found in 445 Hood Road.

The strongest piece of evidence connecting the 445 Hood Road to criminal activity is the Isuzu truck's presence to the grow house.  However, the warrant affidavit does not indicate that the Isuzu was repeatedly at the grow house or was ever seen at 445 Hood Road.  *Cf. United States v. Truong*, No. 11-cr-5159, 2011 WL 3298920, *3 (W.D. Wash. Aug. 1, 2011) (finding probable cause in part where defendant's vehicles "were repeatedly seen traveling between [defendant's business] and grow houses, and the same vehicles were seen at [the defendant's] primary residence . . . and the known and suspected grow houses").  Instead, the Isuzu, although connected to McCullough

90

AO 72A
(Rev.8/8
2)

and 445 Hood Road, appears to have been seen only on one occasion at the Jodeco grow house.[28]

As for the box for "Josh" found in the grow house, this does not demonstrate that the box was for McCullough. Even if was reasonable to draw this inference, the box does not suggest that evidence of narcotics would be at 445 Hood Road.

McCullough's financial interest in Old South Amusement and ownership interest in Backwoods Bar & Grill do not provide probable cause to support the search of 445 Hood Road. Law enforcement's theory is that the grow houses were financed by these two businesses, so it was reasonable for business owners to keep records of their businesses at their residences. However, it is not clear what allegations connect these businesses to the grow houses.

The allegations about Backwoods Bar & Grill are merely that: (1) a confidential informant overheard a conversation about McCullough starting a gym; (2) McCullough

---

[28]   The undersigned agrees with the government that because the Isuzu truck was linked to Preferred Amusements at 445 Hood Road, it was reasonable that the files and documents relating to Preferred Amusements would be at 445 Hood Road. [*See* Doc. 236 at 42 n.8]. To the extent that the government asserts that the warrant affidavit linked Preferred Amusements with narcotics activity, the undersigned disagrees because the only link is the Isuzu truck, which the undersigned found in the main text to be insufficient. As such, Preferred Amusements does not provide a basis to search 445 Hood Road.

AO 72A
(Rev.8/8
2)

owned Backwoods Bar & Grill; (3) the Isuzu seen outside of the Jodeco grow house was parked at Backwoods Bar & Grill; (4) a box for "Josh" was found at the 1680 Jodeco Road grow house; and (5) the grow houses were too young to be self-supporting.  These allegations do not show or suggest that money was passing from Backwoods Bar & Grill to the grow houses, as the connections established in the affidavit between Backwoods Bar and any grow house is tenuous.  That an Isuzu registered to McCullough was seen at both locations says nothing about the bar being a source of funding.  That an item addressed to McCullough was at the grow house is also not demonstrative that McCullough was using Backwoods Bar & Grill to fund the grow houses.  The undersigned draws the same conclusion about McCullough starting a "gym."

The allegations regarding Old South Amusement also does not provide a substantial basis for finding probable cause that it was being used to fund grow houses. The allegations about this business are as follows: (1) McCullough had a financial interest in it; (2) McKenzie and K. Autry worked at the company at the time of their arrests for operating grow houses; (3) the Whortons, who have criminal histories involving illegal gambling and/or drug crimes, had a financial and business interest in the company; (4) a car registered to S. Whorton was seen at 1686 Jodeco Road grow

92

house; and (5) gaming machines from Old South Amusement were used at the Jodeco Road grow houses as a security system.  It is unclear how this evidence demonstrates any connection between McCullough's own financial interest in Old South Amusement and the grow houses.  Even if this evidence provided a connection, there is the additional problem that the warrant affidavit does not define McCullough's "financial interest" in Old South Amusement, so it is unclear why evidence about the marijuana scheme would be at 445 Hood Road.  The warrant affidavit says that "[i]t would be reasonable that business owners would keep documents and records of their businesses and financial activity within their residence and other businesses they own."  But, the warrant affidavit indicates that McCullough's financial interest is not an ownership interest because the affidavit states that it was owned by Rebecca Harris.  Thus, the warrant affidavit does not indicate that McCullough's financial interest in Old South Amusement provided a substantial basis for creating probable cause to search 445 Hood Road for evidence of narcotics distribution.

Based on the evidence presented in the warrant affidavit, the undersigned concludes that there was not a substantial basis for the magistrate to conclude that there was probable cause to search 445 Hood Road.

93

### c.     *Franks*

The undersigned concludes that McCullough has not met his burden to have a *Franks* hearing.  To warrant such a hearing, a defendant must in part make a substantial preliminary showing that the affidavit contains a deliberately false statement or a statement made with reckless disregard for the truth.  *Sarras*, 575 F.3d at 12. McCullough has not made this showing because his preliminary motion merely seeks to investigate whether the affidavit contains falsehoods or statements made in reckless disregard for the truth and additional time to supplement the motion on this issue. [Doc. 155 at 5-6].  His reply brief does nothing more than incorporate these prior statements.  [Doc. 259 at 6].  These statements/arguments fail to demonstrate any statements that were false or made in reckless disregard for the truth.  As a result, the Court **DENIES** McCullough's request for a *Franks* hearing.

### d.     *Leon Good Faith*

The undersigned concludes that although there is not a substantial basis that probable cause supported issuance of the warrant, the warrant was sufficiently valid under the *Leon* good faith exception.  Courts generally require a minimal nexus between the criminal activity and the object of the search to apply the good faith exception. *See United States v. Reed*, 195 Fed. Appx. 815, 828 (10th Cir. Nov. 30,

94

2006) (indicating that although the "case stretches *Leon*'s good faith exception to its elastic limit, [ ] a minimal (barely) nexus existed between the place to be searched, Reed and the suspected criminal activity"); *United States v. Washington*, 380 F.3d 236, 242 (6th Cir. 2004) (indicating that a minimally sufficient nexus between the illegal activity and the place to be searched was needed to support an officer's good-faith belief in the warrant's validity).  For the reasons discussed below, this standard is met here.

The warrant affidavit indicates that an Isuzu truck was registered to Preferred Amusements at 445 Hood Road.  Danielle McCullough, the spouse of McCullough, owned the residence at 445 Hood Road, which is where McCullough resided.  Thus, there is a connection between the Isuzu truck, McCullough, and 445 Hood Road.  This Isuzu truck was then seen outside the grow house of 1680 Jodeco Road and then again at McCullough's business, Backwoods Bar & Grill.  A box "for Josh," which is McCullough's first name, was found within a grow house.  Additionally, McCullough had a financial interest in Old South Amusement, which had employees involved in the grow houses and equipment found in the grow houses.  Thus, the warrant affidavit linked McCullough to the grow houses.  Given the links between the Isuzu truck, McCullough, the grow houses, and 455 Hood Road, the undersigned concludes that the

95

warrant affidavit was not a bare bones affidavit as it provided a nexus between 445 Hood Road and the criminal activity.[29]  As a result, the *Leon* good faith exception to the exclusionary rule leads to the conclusion that the fruits of the search at 455 Hood Road should not be suppressed.

> F.      *2220 Jodeco Road*

> > 1.      *Parties' Arguments*

McCullough seeks to suppress evidence from a search of his business, Backwoods Bar & Grill, which is located at 2220 Jodeco Road.  [*See* Doc. 156].  He first argues that the warrant affidavit contained minimal information to establish the probability that the items sought were located at 2220 Jodeco Road.  [*Id.* at 3].  He next argues that the warrant was overly broad and did not authorize the seizure of firearms as they were crossed out from the warrant.  [*Id.* at 4-5].  McCullough further argues that the warrant did not authorize the seizure of the purchase agreement for 436 Hood Road.

---

[29]      As for the seizure of firearms at 445 Hood Road, the undersigned concludes that these were properly seized.  The undersigned recognizes that the following language was stricken from the affidavit: "firearms, components of firearms, ammunition."  However, such firearms are considered tools of the drug trade and properly seized as part of the warrant given that it was for the purpose of investigating the narcotics trade.  *See United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).

AO 72A
(Rev.8/8
2)

[*Id.* at 5].  Finally, the motion seeks additional time to determine whether the warrant affidavit contains false statements for purposes of *Franks v. Delaware*.  [*Id.* at 6].

The government responds by first asserting that McCullough did not allege standing to challenge the search of 2220 Jodeco Road.  [Doc. 236 at 35].  The government argues that there was probable cause to support the search because law enforcement was aware that the owner of Backwoods Bar and Grill supported the operation of the grow houses.  [*Id.* at 42].  It also asserts that an Isuzu truck owned by Preferred Amusements was seen outside the grow houses at 925 Hemphill Road and 1680 Jodeco Road and was parked outside of Backwoods Bar.  [*Id.*].  Finally, the government argues that there was nothing to suggest that the agents did not reasonably rely in good faith on the validity of the warrant because it was not facially deficient or so lacking in indicia of probable cause and the magistrate did not abandon the judicial role.  [*Id.* at 51].

McCullough's reply brief contends that he has standing because the warrant affidavit identifies him as the owner of Backwoods Bar & Grill.  [Doc. 259 at 5].  It then merely reincorporates prior arguments from the motion to suppress.  [*See id.* at 5-6].

97

### 2.     Discussion

The parties' briefs raise four issues: (1) whether McCullough has standing to challenge the search of 2220 Jodeco Road; (2) whether probable cause supports a search of this business; (3) whether a *Franks* hearing is warranted; and (4) whether law enforcement had a good faith belief that the warrant was valid.  The undersigned addresses each issue below.

### a.     Standing

The undersigned concludes that, despite allegations of ownership, there is insufficient information as to whether McCullough has standing to contest the search of Backwoods Bar and Grill at 2220 Jodeco Road.  "An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987).  This reduced expectation of privacy does not mean that a defendant has no expectation of privacy in a place of business.  *Untied States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999).  Thus, "[t]he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property."  *United States v. Hall*, 47 F.3d 1091, 1094 (11th Cir. 1995) (quoting *See v. Seattle*, 387 U.S. 541, 543 (1967)).  Here, McCullough has merely alleged and pointed

98

to the warrant affidavit statement of McCullough's ownership of Backwoods Bar & Grill.  [*See* Doc. 156 at 1; Doc. 259 at 5].  This is insufficient to establish standing because a number of factors are relevant in determining an individual's standing to challenge the search of a business.

A sole proprietor of a business has standing with regard to his place of business and business records.  *See* LaFave, 6 Search & Seizure § 11.3(d) (4th ed.) & n.217.  Also, "a commercial proprietor has a reasonable expectation of privacy only in those areas where affirmative steps have been taken to exclude the public."  *Hall*, 47 F.3d at 1096.  However, "the weight of precedent . . . clearly indicates that the possessory interest attendant to sole ownership of a corporation is not, in and of itself, sufficient to confer upon the owner Fourth Amendment standing as to all corporate property."  *United States v. Okun*, No. 3:08-cr-132, 2009 WL 255624, *4 (E.D. Va. Feb. 2, 2009) (citing cases).  Indeed, the former Fifth Circuit has stated that where a corporate officer seeks to suppress illegally-seized records and claims standing as a corporate officer, he does not establish standing because

> [w]hen a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were

99

> obtained from the corporation.   Its wrongs are not his wrongs; its
> immunity is not his immunity.

*United States v. Britt*, 508 F.2d 1052, 1055-56 (5th Cir. 1975) (quoting *Lagow v. United States*, 159 F.2d 245, 246 (2d Cir. 1946)[30]).   A substantial ownership interest in a corporation may be a factor to support a finding for standing; however, courts have concluded that the defendant must provide additional evidence of a relationship to the areas searched.   *United States v. Torres-Ramos*, No. CR 06-656, 2008 WL 4667119, *11 (C.D. Cal. Oct. 17, 2008); *see also United States v. Bush*, 582 F.2d 1016, 1019 (5th Cir. 1978) ("The interest of a stockholder and corporate officer in the property of the corporation is not sufficient to provide that stockholder, in his individual capacity, with standing.").   To determine whether a corporate officer has standing, the former Fifth Circuit has identified the following nonexclusive factors: (1) whether the documents seized were prepared by the defendant; (2) where the searched information was stored (personal versus corporate storage); (3) whether the defendant was on the premises at the time of the search; and (4) whether the search was directed at corporate activity generally as opposed to the corporate officer personally.   *Bush*, 582 F.2d at

---

[30]   Professor LaFave has noted that this rationale was somewhat undercut by *Mancusi v. DeForte*, 392 U.S. 264 (1968).   Lafave 6 Search & Seizure § 11.3(d) (noting that *Lagow* statement was "somewhat of an overstatement" following *Mancusi*).

100

1019.  In other words, there must be a "nexus between the area searched and the work space of the defendant."  *Britt*, 508 F.2d at 1056.[31]

Here, McCullough has not provided any information about the type of business Backwoods Bar and Grill is, *i.e.*, whether it is a corporation, a partnership, a sole proprietorship, or some other artificial legal entity.  Also, McCullough has not argued why his ownership status provides him with an expectation of privacy in the search of 2220 Jodeco Road.  While it is possible that McCullough's ownership interest in Backwoods Bar & Grill provides McCullough with standing, the undersigned has insufficient information to make a determination as to his standing at this time.  As a result, the undersigned concludes that an evidentiary hearing is necessary for McCullough to demonstrate whether his status as an owner provides him with standing to contest the search of 2220 Jodeco Road.

---

[31]    A district court from the Middle District of Florida listed the following factors as relevant in determining whether a person has a reasonable expectation of privacy in commercial premises: "whether the person shared the area with anyone else, . . .; whether others could be expected to enter the area or disturb papers in it without permission, . . .; and whether the person has a key."  *United States v. Evaschuck*, 65 F. Supp. 2d 1360, 1365 (M.D. Fla. 1999) (citations omitted).

AO 72A
(Rev.8/8
2)

### b.      Probable Cause and Leon Good Faith

Since the undersigned is unable to determine whether McCullough has a legitimate expectation of privacy in 2220 Jodeco Road, the undersigned will not evaluate at this time whether the issuance of the search warrant for 2220 Jodeco Road was supported by probable cause or whether law enforcement had a good faith belief that the warrant was valid under *Leon*.  Instead, the undersigned will defer resolving these issues until after McCullough establishes standing to challenge the search of 2220 Jodeco Road.

### c.      Franks

The undersigned concludes that McCullough's request for a *Franks* hearing for 2220 Jodeco Road is unwarranted for the same reasons as his request for 445 Hood Road, namely, he has merely requested additional time to show that the warrant affidavit contains false statements without actually making any substantial preliminary showing that the affidavit contains false statements.  [*See* Docs. 156, 259]. Accordingly, the Court **DENIES** McCullough's request for a *Franks* hearing.

102

G.    *1828 Flat Rock Road*

1.    *Parties' Arguments*

Sandra and Jimmy Ray Whorton ("the Whortons") seek suppression of evidence found during the search of 1828 Flat Rock Road. [*See* Docs. 125 (S. Whorton), 163 (J. Whorton)]. First, the Whortons argue that the affidavit did not support probable cause to obtain the exhaustive list of items sought in the search warrant, as the warrant fails to connect the facts with the place to be searched. [*See* Doc. 125 at 3, 4]. Second, the Whortons assert that the affidavit provides a theory that the grow houses were financed from outside sources, but does not provide any allegations tying financing to S. Whorton or her residence. [*Id.*]. Third, the Whortons assert that pursuant to *Franks*, the Court must disregard the worthless or misleading portions of the affidavit. [*Id.* at 3-4].

The government responds by first arguing that the Whortons have not established standing because they fail to articulate facts to prove standing. [Doc. 236 at 35]. It then argues that there was probable cause to search 1828 Flat Rock Road because: (1) S. Whorton's truck, which contained grow house information, was seen at both the Hemphill and Alexander grow houses; (2) gaming machines from JSCJ Manufacturing and Old South Amusement were found at the Jodeco Road grow house;

103

(3) S. Whorton's car, which had a license plate camera similar to those used by drug

dealers, was seen at the home next to the 1680 Jodeco grow house; and (4) there was

the statement that outside funding from the businesses was used to support the

operation of grow houses and information about these businesses would be found in the

residences.  [*Id.* at 42-44].

In reply, S. Whorton argues that she has standing to challenge the search of the

home based on the warrant affidavit and the facts in the government's response brief.

[Doc. 255 at 1].  S. Whorton then argues that the facts in the search warrant do not

support a probable cause finding.  [*Id.* at 3-5].

    *2.    Discussion*

The parties' briefs raise the following three issues: (1) whether the Whortons

have standing to challenge the search of 1828 Flat Rock Road; (2) whether the warrant

affidavit was supported by probable cause; (3) whether the *Leon* good faith exception

applies if the warrant was not supported by probable cause; and (4) whether a *Franks*

hearing is needed.  The undersigned addresses each issue below.

    *a.    Standing*

Although the Whortons' standing showing is deficient, the undersigned

concludes that they have standing to contest the search of 1828 Flat Rock Road.  The

104

opening briefs by the Whortons do not address the standing issue.  [*See generally*

Docs. 125, 163].  Although S. Whorton's reply brief addresses standing,[32] her argument

is unhelpful as it states without elaboration that "[b]ased upon the facts set forth in the

affidavits in support of the search warrant[] for . . . 1828 Flat Rock, as well as the facts

set forth in the Government's Response [ ], Sandra Whorton clearly has standing to

challenge the searches of her . . . residence."  [*See* Doc. 255 at 1].  There are two

problems with this statement.  First, by failing to identify those facts that support

standing, S. Whorton essentially asks the Court to sift through the warrant affidavit to

identify the relevant facts.  The Court is under no obligation to do this.  *See Murdock*,

2010 WL 5538514 at *4 n.10.  Second, the facts in the government's response brief

outline its theory of the case, but S. Whorton cannot use the government's theory to

establish standing.   *See Singleton*, 987 F.2d at 1449; *see also Thompson*,

171 Fed. Appx. at 828.

Despite these problems, the undersigned cannot ignore the statements in the

warrant affidavit that the Whortons both resided at 1828 Flat Rock Road or in

S. Whorton's preliminary motion to suppress that 1828 Flat Rock Road is her

---

[32]     J. Whorton did not file a reply brief to the government's response brief
[*see generally* Dkt.], so he has not even addressed standing.

105

residence.  This warrant affidavit may be used to support standing, *see Eyster*, 948 F.2d at 1209 (allowing defendant to use government's inventory identifying residence as belonging to defendant to help establish standing), as may representations by Whorton's attorney in his brief, *see Ford*, 34 F.3d at 994-95 (finding standing where motion and brief in support identified searched premises as defendant's home and as defendant's leased property).  A resident generally has standing to contest a search of a home.  *See* Part IV.E.2.a (citing cases for proposition that a resident of a home has standing to contest a search).  The undersigned is unaware of any evidence to suggest that a different conclusion should be reached in this case.  As a result, the undersigned concludes that the Whortons, as residents of 1828 Flat Rock Road, have standing to contest the search of the home.[33]  Since the undersigned concludes that the Whortons have standing to challenge the search of 1828 Flat Rock Road, the undersigned turns to whether there was a substantial basis for the magistrate to believe that there was probable cause to support the search.

---

[33]    If the government believes that the Court should reach a different conclusion, it should notify the Court within **seven (7) days** of entry of this order, so that the Court can schedule an evidentiary hearing to require the Whortons to prove that they have standing.  Otherwise, the Court will construe the government's silence as a concession that the Whortons have standing to challenge the search of 1828 Flat Rock Road.

106

*b.      Probable Cause*

The undersigned concludes that there is not substantial evidence supporting the magistrate judge's probable cause determination.  Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  The affidavit does not suggest that evidence of the marijuana growing scheme would be found at 1828 Flat Rock Road.

The affidavit indicates that: (1) the Whortons reside at Flat Rock Road; (2) S. Whorton is the CEO of Old South Amusement and JSCJ Manufacturing; (3) the Whortons have a criminal history involving illegal gambling and/or narcotics crimes; (4) S. Whorton's car was seen at 1686 Jodeco Road, a support house for the grow house at 1680 Jodeco Road, and this car had a camera system that is used by those who conduct counter-surveillance while transporting narcotics; (5) Old South Amusement employees (K. Autry and McKenzie) were arrested for drug possession; (6) McKenzie was driving a truck registered to JSCJ Manufacturing and S. Whorton that was at the Hemphill grow house; (7) gaming machines belonging to Old South Amusement and JSCJ Manufacturing were found during searches of grow houses; (8) the grow houses were not self-sufficient indicating that they needed financial support from others; and (9) business owners reasonably keep documents and records within their residences.

These circumstances do not suggest that a fair probability of criminal activity would be present at 1828 Flat Rock Road.

First, there is little evidence connecting the illegal activity with 1828 Flat Rock Road. That S. Whorton's car was seen at the 1686 Jodeco support house on one occasion does little to connect the Whortons with any illegal activity. The misconduct of S. Whorton's employees also fails to connect illegal activity with 1828 Flat Rock Road because their conduct and persons are never linked to the Whortons' residence. The affidavit's statements that the grow houses needed financial support, employees were caught performing illegal activity, McKenzie was using a company truck when he was arrested, and gaming machines were found in grow houses do not lead to the conclusion that the operations of Old South Amusement and JSCJ Manufacturing could be tied to the residence at 1828 Flat Rock Road. The undersigned recognizes that the Whortons were corporate officers for these businesses, but there is no specific link to criminal activity of 1828 Flat Rock Road. The undersigned further recognizes that the affidavit states that it is reasonable that business owners would keep financial records of businesses at their residences, but the affidavit does not establish that the Whortons were business owners for Old South Amusement or JSCJ Manufacturing. Instead, the owner of these businesses is identified in the affidavit as Rebecca Harris. As a result,

108

the undersigned concludes that the warrant affidavit does not indicate that there is a fair probability that evidence of crimes will be found at 1828 Flat Rock Road. *Cf. United States v. Segal*, 299 F. Supp. 2d 852, 855 (N.D. Ill. 2004) (finding affidavit provided substantial basis for concluding that probable cause existed to search defendant's residences where it indicated the defendant controlled the residences, there was sufficient information that the defendant regularly conducted business from the residences as he worked from home and took documents home, and the affidavit described in detail how the defendant misappropriated money from business for personal use). Accordingly, the undersigned concludes that there is not substantial evidence supporting the probable cause conclusion.

### c.    *Leon Good Faith*

The undersigned concludes that the *Leon* good faith exception applies to the search of 1828 Flat Rock Road. As outlined in Part III.E above, there are four instances where the *Leon* good faith exception does not apply, but the only situation that appears applicable to this case is whether the warrant was lacking in any indicia of probable cause to search the residence. The *Leon* good faith inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*,

AO 72A
(Rev.8/8
2)

468 U.S. at 922 n.23.  A warrant affidavit lacks an indicia of probable cause if it is a "bare-boned" affidavit, *i.e.*, one that "contains 'nothing more than conclusory allegations'–defects rendering it impossible for the detective to have reasonably relied upon the warrant's validity." *Martin*, 297 F.3d at 1313.  An affidavit is "bare-boned" if it: (1) lacks a connection between the defendant and the residence to be searched and a link between the residence and the criminal activity; and (2) lacks information that is "fresh." *See id.* at 1314.  Stated differently, the warrant affidavit must "contain[] a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity." *Washington*, 380 F.3d at 242 (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (*en banc*)).

The affidavit in this case was not bare boned.  The affidavit connects the Whortons to the grow houses in two ways.  First, a car registered to the Whortons at the 1828 Flat Rock residence, equipped with what appeared to be a counter-surveillance camera, was seen outside of the support house on November 29, nine days before the warrant was executed.  Second, the Whortons were corporate officers of two companies - - JSCJ Manufacturing and Old South Amusement - - both of which were linked to the grow houses as follows: (1) employees of the companies (McKenzie and K. Autry)

110

were connected to the grow houses; (2) a truck registered to JSCJ Manufacturing and S. Whorton contained marijuana growing equipment; and (3) gaming equipment belonging to the companies and being used as surveillance equipment were found at least at the 1680 Jodeco grow house.  Finally, the warrants indicated that the Whortons had criminal histories, including J. Whorton's history with narcotics.   Given this evidence, the undersigned concludes that there was a sufficient nexus between the illicit activity and the Whortons' residence at 1828 Flat Rock Road for law enforcement to objectively believe that the warrant was supported by probable cause.

Accordingly, the undersigned **RECOMMENDS** that the Whortons' motions to suppress from the search of 1828 Flat Rock Road, [Docs. 125, 163], be **DENIED**.

> d.     *Franks*

The undersigned concludes that the Whortons have not demonstrated that a *Franks* hearing is warranted.  Their motions suggest that the affidavit was phrased in a manner to mislead the court, but they do not actually indicate that there were false or recklessly made statements in the warrant or identify specific statements.  [*See* Doc. 125 at 3].  Accordingly, the undersigned concludes that a *Franks* hearing is unwarranted and **DENIES** any request for a *Franks* hearing that the Whortons sought to make.

111

H.      *1396 Commerce Drive, Suites A and B*

   1.      *Parties' Arguments*

S. Whorton argues that the affidavits fail to establish probable cause for the searchers of suites A and B of 1396 Commerce Drive since the affidavits fail to show a connection to the businesses to be searched and the grow houses. [Doc. 183 at 3-4]. She asserts that the facts as stated are innocuous. [*Id.* at 4]. She then contends that pursuant to *Franks v. Delaware*, the Court must delete worthless and/or misleading portions of the affidavit. [*Id.*]. S. Whorton additionally argues that there is no specific or particularized basis shown that evidence of financing the cultivation of marijuana would be found at these premises. [*Id.*].

The government first responds by arguing that S. Whorton has not articulated facts proving her legitimate expectation of privacy in the search of the two businesses at 1396 Commerce Drive. [Doc. 236 at 35]. The government then argues that even if there was standing, the search warrants were supported by probable cause because: (1) law enforcement was aware that the individuals involved in supporting or operating the grow houses were the owners, officers, and employees of Old South Amusement (at Suite A of 1396 Commerce Drive) and JSCJ Manufacturing (at Suite B of 1396 Commerce Drive); (2) law enforcement knew that assets from the businesses

112

were used to support the grow house operations in that the Silverado truck owned by JSCJ Manufacturing and Whorton was seen at the grow house locations, assets of JSCJ Manufacturing and Old South Amusement were located at another grow house, and a car registered to S. Whorton was seen next door to a grow house; and (3) the affidavit indicated that the grow houses were not self-sustaining, thereby needing outside funding.  [*Id.* at 42-43].

S. Whorton replies that "[b]ased upon the facts set forth in the affidavits in support of the search warrants for 1396 Commerce Drive . . ., as well as the facts set forth in the Government's Response (Doc. 236), Sandra Whorton clearly has standing to challenge the searches of her businesses."  [Doc. 255 at 1].  She then argues that the facts listed in the warrant affidavit do not provide probable cause to search because no allegations showed that the grow houses were financed by JSCJ Manufacturing or Old South Amusement.  [*Id.* at 3].  Instead, she asserts that this conclusion is "pure, unadulterated speculation," so there was no probable cause to believe there would be evidence of marijuana growing or the financing of marijuana growing at the businesses. [*Id.* at 3, 5].  S. Whorton then explains why the evidence is insufficient to establish probable cause individually or in its totality as follows: (1) her vehicle at 1680 Jodeco Road was doing nothing illegal and the rear camera's use for a drug operation is

113

speculation; (2) McKenzie's use of a company truck is benign as he was an employee; (3) JSCJ Manufacturing and Old South operated legal video gaming machines; (4) that Autry and McKenzie were employees did not provide a factual basis for probable cause; and (5) there was no evidence that the businesses were aware that their machines were being used at 1680 Jodeco Road.  [*Id.* at 3-4].

2. *Discussion*

Although the parties' briefs raise a number of issues, the undersigned does not address or resolve them at this time.  Instead, the Court concludes that an evidentiary hearing is needed to determine whether S. Whorton has standing to challenge the searches of the businesses at 1396 Commerce Drive.  S. Whorton's initial brief does not raise any arguments as to her standing while her reply brief essentially asks that Court to identify facts in the warrant affidavit and the government's response brief that support standing.  The Court will not make these arguments for her.  *See Murdock*, 2010 WL 5538514 at *4 n.10.  However, the undersigned recognizes that S. Whorton's status as a corporate officer for Old South Amusement and JSCJ Manufacturing may provide her with standing, but this status by itself is insufficient to establish standing. *See* Part IV.F.2.a, *supra*.  The undersigned therefore will hold a hearing to allow S. Whorton demonstrate that she has standing to challenge the searches at suites A and

114

B of 1396 Commerce Drive.  Accordingly, the Court **DEFERS** resolving S. Whorton's motion to suppress the searches of Suites A and B of 1396 Commerce Drive.  [*See* Doc. 183].

      I.    *Traffic Stop*

         1.    *Parties' Arguments*

McKenzie argues that the Court should hold an evidentiary hearing and a *Jackson v. Denno* to determine whether evidence should be suppressed following the November 3, 2010, traffic stop.  [Doc. 113 at 1].  He argues that the traffic stop was unlawful because law enforcement did not have probable cause.  [*Id.* at 3].  He also complains that the search following the stop was unlawful because he did not provide valid consent.  [*Id.* at 3-4].  Without explanation, McKenzie also asserts that law enforcement engaged in illegal questioning.  [*Id.* at 4].

The government responds by arguing that the traffic stop was proper because: (1) the tag was obstructed by the lift gate, preventing law enforcement from reading the license plate; and (2) agents had reason to believe that the truck was associated with the grow house as it was observed leaving the residence.  [Doc. 236 at 31].  The government also contends that McKenzie's arguments about consent are insufficient as they are not definite, specific or detailed.  [*Id.* at 32].  The government then asserts

115

that even if considered, McKenzie's arrest would not be sufficient to amount to duress or coercion.  [*Id.* at 32-33].  McKenzie's reply brief does not address this issue. [*See generally* Doc. 260].

> 2.   *Discussion*

The parties' briefs raise three issues: (1) whether a *Jackson v. Denno* hearing is warranted; (2) whether there was a legitimate basis to conduct a traffic stop; and (3) whether McKenzie's motion provides sufficient allegations to hold an evidentiary hearing on the voluntariness of his consent.

> a.   *Jackson v. Denno Hearing*

"Under *Jackson v. Denno*, '[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.' " *United States v. Francisco-Gutierrez*, 249 Fed. Appx. 135, 140-41 (11th Cir. Sept. 21, 2007) (quoting *Denno*, 378 U.S. at 380).  A hearing will only be held if the defendant "allege[s] *facts* which would, if proven true, indicate the voluntariness of his confession." *Id.* (quoting *United States v. Davidson*, 768 F.2d 1266, 1270 (11th Cir. 1985)) (emphasis in original).  Here, McKenzie's motion fails to identify any confessions (or statements for that matter) that he made during the traffic stop.  Under

116

normal circumstances, the undersigned would conclude that he is not entitled to a *Denno* hearing stemming from his traffic stop. However, as discussed below, the Court will hold an evidentiary hearing concerning the circumstances surrounding the traffic stop, so the undersigned will also hear any evidence relating to the voluntariness of any statements made by McKenzie.

Accordingly, the Court **GRANTS** McKenzie's request for a *Jackson v. Denno* hearing.

### b.      Traffic Stop

McKenzie's motion does not specifically identify how his traffic stop was unlawful. His initial motion conclusorily states that the traffic stop was unlawful because it was not supported by probable cause. [Doc. 113 at 2]. That the stop may not have been supported by probable cause does not automatically make it unlawful because "[a] traffic stop is constitutional if it is either based upon probable cause to believe that a traffic violation has occurred *or justified by reasonable suspicion that a person is engaged in criminal activity*." *United States v. Corley*, 408 Fed. Appx. 245, 246 (11th Cir. Jan. 6, 2011) (citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)) (emphasis added).

117

Based on the parties' submissions, the undersigned concludes that there may have been either probable cause or reasonable suspicion to stop the truck. The officer's report for the traffic stop indicated that the officer initiated the traffic stop because the truck's lift gate obstructed the vehicle tag.  (*See* Supplemental Report for 11/3/2010 Traffic Stop in Doc. 245 at Exh. P).  Under Georgia law,

> every vehicle required to be registered under this chapter . . . shall at all times display the license plate issued to the owner for such vehicle, and the plate . . . shall be at all times plainly visible. . . .  It shall be the duty of the operator of any vehicle to keep the license plate legible at all times. No license plate shall be covered with any material unless the material is colorless and transparent.  No apparatus that obstructs or hinders the clear display and legibility of a license plate shall be attached to the rear of any motor vehicle required to be registered in the state. Any person who violates any provision of this Code section shall be guilty of a misdemeanor.

O.C.G.A. § 40-2-42.  The report indicated that the vehicle tag was "obstructed," suggesting that it was not "at all times plainly visible."  This was a misdemeanor under Georgia law, so it appears that there was probable cause (or at least reasonable suspicion) for the officer to stop McKenzie's truck for a traffic violation in the absence of any other evidence from McKenzie that this report was false.[34]  This conclusion rests

---

[34]     Depending on the knowledge of law enforcement, the undersigned also notes that there may have been reasonable suspicion to support the stop as well.  *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006) (finding traffic stop was not unreasonable where driver was connected to a grow house).

on the veracity of the traffic stop report.  The defendant has challenged the stop, so the undersigned will permit McKenzie an opportunity to challenge law enforcement's version of events at an evidentiary hearing.

c.    *Consent to Search*

McKenzie also seeks an evidentiary hearing on the grounds that his consent to search the truck was unlawful because he "denies that he gave any valid consent to the search of the vehicle" and any consent "was not knowing and voluntary, but rather [] a function of acquiescence to a claim of lawful authority."  [Doc. 113 at 2].  The government notes that a defendant's motion to suppress "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented."  *Richardson*, 764 F.2d at 1527.  This court is under no obligation to act on McKenzie's "general or conclusory assertions." *Id.*  However, since the undersigned will hold an evidentiary hearing concerning the circumstances of the traffic stop, the undersigned will also consider the circumstances surrounding the search of the truck.  However, Defendant should be on notice that motions challenging searches which do not contain factual averments demonstrating the need to hold an evidentiary hearing in the future may be denied without an evidentiary hearing.

119

AO 72A
(Rev.8/8
2)

Accordingly, the undersigned **DEFERS** resolving McKenzie's motion to suppress evidence from the traffic stop, [Doc. 113], until after the forthcoming evidentiary hearing.

### J.    Wedding Ring

#### 1.    Parties' Contentions

McCullough seeks to have evidence of his wedding band suppressed because the seizure "was done in violation of the Fourth, Fifth, and Sixth Amendments." [Doc. 197 at 3]. McCullough explains that he was questioned about it after asserting his right to counsel and in a manner to force McCullough to give evidence against himself, so the questioning violated his right to remain silent and his right to have an attorney present. [*Id.*]. He also asserts that the seizure violated the Fourth Amendment because it was done without a warrant or probable cause. [*Id.*]. The government responds that the seizure of the wedding band was authorized as incident to his lawful arrest. [Doc. 236 at 48-49]. McCullough does not respond to this argument in his reply brief. [*See generally* Doc. 259].

#### 2.    Discussion

The undersigned concludes that two of the three constitutional bases that McCullough seeks for suppression of his wedding ring are unwarranted, but that an

120

evidentiary hearing is required to determine whether the ring was seized in violation of the Fourth Amendment.  First, the Fifth and Sixth Amendments do not require suppression of the wedding ring (at least insofar as McCullough's motion argues the issues).  Initially, the undersigned notes that it is appropriate for McCullough to seek suppression of the wedding band under these two amendments  because the fruit of the poisonous tree "doctrine [] applies to the fruits of evidence obtained in violation of accused's Sixth Amendment right to counsel . . . as well as violations of the Fifth Amendment."  *United States v. Terzado-Madruga*, 897 F.2d 1099, 1113 (11th Cir. 1990).  To obtain suppression of the ring as poisonous fruit, McCullough must show violations of these two amendments.  His motion fails to demonstrate such violations.

As for the Sixth Amendment, McCullough appears to argue that because he asserted his right to counsel during the December 2010 search, this invocation of the right carried over to his April 2011 arrest.  The undersigned disagrees.  The Sixth Amendment right to counsel is "offense-specific," and there is no violation where the right has not attached. *See United States v. Moore*, No. 3:03-cr-178, 2007 WL 708789, *7 (D. Conn. Feb. 20, 2007) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991), and *Texas v. Cobb*, 532 U.S. 162, 168 (2001)).  This right attaches "at or after the initiation of adversary judicial criminal proceedings–whether by way of formal charge,

preliminary hearing, indictment, information, or arraignment." *McNeil*, 501 U.S. at 175 (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)).  The allegations in McCullough's motion do not demonstrate that his Sixth Amendment right had attached in December 2010 because this motion alleges that he asserted his right to counsel upon being detained during the search of his residence in December 2010.  [Doc. 197 ¶ 2]. This allegation does not demonstrate that there was the initiation of any adversary judicial criminal proceedings as of December 2010, so he cannot claim that agents violated his Sixth Amendment right upon questioning him in April 2011 based on some invocation of rights in December.[35]

However, the Sixth Amendment right attaches "[o]nce the indictment is returned."  *Lehn v. Holmes*, 364 F.3d 862, 866 (7th Cir. 2004) (citing *Fellers v. United States*, 540 U.S. 519, 524 (2004)).  McCullough's motion indicates that his April 2011 arrest, which was based on a federal arrest warrant, was precipitated by the return of a federal indictment.  Thus, it appears that his Sixth Amendment right had attached at the time he was questioned.  That the right attached does not end the inquiry because there

---

[35]   Also, even if the right had attached in December 2010, law enforcement was operating under State law, not federal law.  Since the Sixth Amendment right is offense specific, it is not clear that the invocation of the right to counsel for the state law charges would have applied to the federal law charges.  *See Moore*, 2007 WL 708789 at *7.

AO 72A
(Rev.8/8
2)

is only a Sixth Amendment violation where agents deliberately elicit incriminating information from the defendant after he is indicted. *Fellers*, 540 U.S. at 523-24. McCullough's motion fails to explain (1) why law enforcement's conduct met the deliberate-elicitation standard, and (2) how the information or the wedding band was incriminating. As a result, the undersigned concludes that McCullough's motion does not demonstrate that there was a Sixth Amendment violation, so the evidence of the wedding ring is not subject to suppression on this ground.

As for the Fifth Amendment, the undersigned also concludes that McCullough's motion has not identified a violation. Like the Sixth Amendment argument, McCullough argues that his December 2010 invocation of his right to counsel prevented law enforcement from questioning him in April 2011. As a general matter, once an accused has invoked his right to counsel under the Fifth Amendment, the defendant "is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *United States v. Gomez*, 927 F.2d 1530, 1537 (11th Cir. 1991) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). This invocation does not extend indefinitely. *See Maryland v. Shatzer*, 130 S. Ct. 1213, 1223 (2010). Instead, a 14-day break in custody will terminate a defendant's prior

invocation of his right to counsel. *Id.* Here, there was a five-month gap between the December 8, 2010, invocation of the right to counsel, and the April 2011 questioning during the execution of the arrest warrant. This passage of time terminates McCullough's invocation of his right to counsel under the Fifth Amendment. *See Shatzer*, *id.*

However, even if law enforcement impermissibly interrogated the defendant outside of his right to counsel in April 2011, the undersigned concludes that McCullough still has not demonstrated any Fifth Amendment violation. Once a defendant invokes the right to an attorney, law enforcement cannot engage in further interrogation, which constitutes "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Gomez*, 927 F.2d at 1537-38 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). An incriminating response is defined as "any response–whether inculpatory or exculpatory–that the *prosecution* may seek to introduce at trial." *Id.* (quoting *Innis*, 446 U.S. at 301 n.5) (emphasis in original). Here, the defendant has not explained why the prosecution may seek to introduce evidence about his wedding ring, and it is not apparent why this ring has any evidentiary value. As a result, the undersigned finds no

124

violation of the Fifth Amendment during McCullough's arrest in April 2011, so evidence of the ring is not subject to suppression on Fifth Amendment grounds.

Although McCullough's motion fails to demonstrate that the Fifth and Sixth Amendments provide bases for suppression, the undersigned concludes that the Fourth Amendment might provides such a basis. The government has posited that the ring was properly seized as an incident to a lawful arrest. McCullough appears to concede that his arrest was legal pursuant to a valid arrest warrant, so the question is whether the seizure of the wedding ring was incident to this arrest. "[I]tems seized in warrantless searches incident to lawful arrests are admissible. Such searches are considered 'reasonable' in fourth amendment terms because they are necessary to protect the arresting officers' safety and prevent the concealment or destruction of evidence." *United States v. Cravero*, 545 F.2d 406, 417 (5th Cir. 1977)[36] (citing *Chimel v. California*, 395 U.S. 752, 762-64 (1969)); *see also United States v. Acosta*, --- F. Supp. 2d ----, 2011 WL 2401829, *63 (N.D. Ga. June 13, 2011) (Carnes, J., adopting King, M.J.) (concluding that search of defendant and seizure of items on

---

[36]   *Cravero* was reversed by implication on other grounds by *Steagald v. United States*, 451 U.S. 204 (1981). *See United States v. Congote*, 656 F.2d 971, 973 (5th Cir. Unit B Sept. 1981).

125

defendant, including his wallet and contents of the wallet, were admissible as a search incident to arrest). Facially, this authority allows for the seizure of the wedding ring.

However, McCullough alleges that the seizure occurred only after law enforcement directed him to search for the ring, which he was not currently wearing. In other words, these allegations take the seizure of the ring out of the search-incident-to-arrest exception because McCullough was not wearing the ring when he was arrested. Instead, he came into possession of it only after being ordered by law enforcement to search for, retrieve and wear it. The circumstances behind law enforcement's actions are unclear. The undersigned therefore concludes that a hearing is warranted to determine whether the seizure of the wedding ring was made in accordance with the requirements of the Fourth Amendment.

Accordingly, the undersigned **DEFERS** resolving McCullough's motion to suppress evidence of his wedding ring.[37]

*K.      Statements*

---

[37]      It is not apparent to the undersigned what evidentiary value this ring has to this case. As a result, the parties should notify the Court whether a hearing is truly required on the legality of the seizure of the wedding ring.

126

The following defendants seeks suppression of statements: S. Whorton, K. Autry, H. Autry, Bunch, and McCullough.  The undersigned addresses these defendants' arguments separately below.

### 1.    S. Whorton

S. Whorton asserts that during the December 8, 2010, search of the 1828 Flat Rock Road residence, she was subjected to custodial interrogation without being given warnings pursuant to *Miranda*.  [Doc. 124 at 1].  She states that her statements should be suppressed because: (1) they were made without being given *Miranda* warnings; (2) there was no waiver of *Miranda*; and (3) the statements were not freely or voluntarily made.  [*Id.* at 2].  She claims that she was in custody because she "reasonably felt a restrain on her freedom of movement to such an extent that she understood she was not free to leave" without actually explaining the circumstances in which she was questioned.  [*Id.* at 124].

Under the Fourth Amendment, law enforcement may detain an individual during a search of a residence.  *See Michigan v. Summers*, 452 U.S. 692, 705 (1981).  Under the Fifth Amendment, law enforcement may question an individual if she is not "in custody."  *See United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010).  A detention during a search warrant may or may not meet the Fifth Amendment's "in

custody" requirement.  *Compare United States v. Hargrove*, 625 F.3d 170, 179-80 (4th Cir. 2010) (concluding defendant was not "in custody" during execution of search warrant where only two agents interviewed defendant, who was never placed in handcuffs, was told he was free to leave and not under arrest, in an amicable and comfortable atmosphere); *United States v. Schulz*, No. 1:10-cr-16, 2011 WL 738403, *3 (N.D. Fla. Feb. 24, 2011) (finding defendants were not "in custody" during execution of search warrant where there was no formal arrest, the defendants remained on their property, were allowed to enter their residence, and were never told they could not leave)[38] *with United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009) (concluding that defendant was "in custody" despite short duration of interrogation and lack of pressure applied to detain defendant (he was neither handcuffed nor told he was under arrest) because officers were in defendant's residence when he arrived and an officer commanded defendant to follow him when he arrived at his residence and questioned him about child pornography found during the search); *United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007) (concluding defendant was "in custody" during execution of a search warrant where police dominated the atmosphere (the search was early in the morning, officers forcibly entered th home and defendant was immediately

---

[38]        *See also United States v. McCarty*, 475 F.3d 39, 45-46 (1st Cir. 2007).

128

detained in handcuffs, separated from her boyfriend and children, placed face down on the floor and supervised by police)).[39]  It bears noting, however, that "[c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home."  *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) (quoting *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994)).  The factors that courts consider in evaluating whether an individual is "in custody" are "whether 'the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled.' "  *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (quoting *United States v. Long*, 866 F.2d 402, 405 (11th Cir. 1989)).

Here, S. Whorton only conclusorily states that she was in custody during the execution of the search warrant because she was not free to leave.  Without any specific allegations to demonstrate that she was "in custody" when questioned during the execution of the search warrant, it does not appear that there was a Fifth Amendment violation when S. Whorton was questioned.  *See United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994) ("[I]n the usual case, a person detained during the execution of a

---

[39]      *See also United States v. Colonna*, 511 F.3d 431, 433-36 (4th Cir. 2007); *United States v. Kim*, 292 F.3d 969, 974-78 (9th Cir. 2002).

search warrant is not 'in custody' for purposes of Miranda.").    Despite this shortcoming, the undersigned will schedule a hearing for S. Whorton to demonstrate whether she was "in custody" and, if so, whether her statements involuntary or otherwise were made in violation of *Miranda*.  The Court reminds S. Whorton that it is her burden to establishing that she was in custody and that her statements were made in response to government questioning.  *De la Fuente*, 548 F.2d at 533 (holding that "if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination."); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *overruled on other grounds, United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988).

Accordingly, the undersigned **DEFERS** resolving Whorton's motion to suppress statements made during the execution of the search warrant at 1828 Flat Rock Road, [Doc. 124], until after a hearing is held on the motion.

2.     *K. Autry*

K. Autry seeks a *Jackson v.Denno* hearing and to suppress statements prior to an arrest on November 3 (presumably during the search of 166 Alexander Drive) and after the arrest because if such statements were made, they may have been obtained in

130

violation of his Fifth and Sixth Amendment rights and they may not have been freely and voluntarily made.  [*See* Docs. 224-25 at 2-3].

The undersigned will hold a *Jackson v. Denno* hearing on K. Autry's motion to suppress statements.  As discussed above, there is a Fifth Amendment violation only if officers questioned K. Autry while he was "in custody," *see Luna-Encinas*, 603 F.3d at 880, and there is a Sixth Amendment violation only when the right attaches "at or after the initiation of adversary judicial criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *McNeil*, 501 U.S. at 175 (quoting *Gouveia*, 467 U.S. at 188).  The motion to suppress does not address either situation, but the undersigned will hold an evidentiary hearing to resolve whether K. Autry's statements were made in violation of his Fifth Amendment rights or Sixth Amendment rights.[40]

---

[40]     For Sixth Amendment purposes, the undersigned notes that there is no violation if the right has not attached.  *See United States v. Barner*, 572 F.3d 1239, 1245 (11th Cir. 2009).  If the right has attached, the post-arrest questioning may still not violate K. Autry's Sixth Amendment rights if the questioning was for booking purposes, *see United States v. Godinez*, 114 F.3d 583, 589 (6th Cir. 1997), or if the statements were not made in response to law enforcement's attempt to deliberately elicit incriminating information from the Autrys, *Fellers*, 540 U.S. at 523-24.  K. Autry should consider dropping his challenge on Sixth Amendment grounds if he cannot make a sufficient showing on these issues.

131

Accordingly, the undersigned **GRANTS** K. Autry's motion for a *Jackson v. Denno* hearing, [Doc. 224], and **DEFERS** resolving his motion to suppress statements, [Doc. 225], until after an evidentiary hearing.

3.    *H. Autry*

H. Autry filed the same motions to suppress statements and for a *Jackson v. Denno* hearing as K. Autry. [*Compare* Docs. 224-25 (K. Autry) *with* Docs. 141-42 (H. Autry)]. Since the motions are the same, the undersigned will hold a hearing on H. Autry's motion to suppress. Accordingly, the undersigned **GRANTS** the motion for a *Jackson v. Denno* hearing, [Doc. 141], and **DEFERS** resolving her motion to suppress statements, [Doc. 142].

H. Autry has also filed a supplemental motion to suppress statements on the grounds that her statements were illegally made as fruits of the unlawful search of 166 Alexander Drive, in violation of her Fourth Amendment rights.[41] [*See* Doc. 199

---

[41]     The opening paragraph of the supplemental motion to suppress indicates that H. Autry was also seeking to suppress the statements under the Fifth and Sixth Amendments. [Doc. 199 at 1]. The allegations in the motion however did not articulate any basis for suppression under these two amendments. For instance, the motion is silent as to when H. Autry's Sixth Amendment right to counsel would have attached. Also, the motion indicates that law enforcement gave H. Autry her *Miranda* rights before being interrogated. As a result, the undersigned does not perceive the motion as articulating grounds for suppression under the Fifth and Sixth Amendments.

AO 72A
(Rev.8/8
2)

at 3-4]. The undersigned has previously concluded that the warrant affidavit supported a probable cause finding for the search of 166 Alexander Drive. *See* Part IV.B, *supra*. As such, there was no illegal search of 166 Alexander, so H. Autry's statements cannot be considered fruits of an unlawful search. Accordingly, the undersigned **RECOMMENDS** that H. Autry's supplemental motion to suppress statements, [Doc. 199], be **DENIED**.

### 4. McCullough

McCullough argues that statements he made during the execution of a search warrant at his residence (445 Hood Road) should be suppressed under the Fourth, Fifth and Sixth Amendments. [Doc. 157]. For the Fifth Amendment, McCullough asserts that upon law enforcement's entry into his residence to execute the search warrant, he was placed in custody and asked to stay seated on the couch in his residence. [*Id.* at 2]. The defendant argues that his statement, while sitting on the couch, in response to a question about who had access to the safe at Backwoods Bar & Grill should be suppressed. [*Id.*]. For the Sixth Amendment, McCullough appears to argue that because he asserted his right to counsel, he should not have been questioned. [*Id.* at 3].

The undersigned will hold an evidentiary hearing on McCullough's motion to suppress statements on Fifth Amendment grounds. As for his Sixth Amendment claim,

133

the undersigned concludes that it fails because McCullough has not shown that his Sixth Amendment right to counsel attached at the time of the execution of the 445 Hood Road search warrant.  At most, he asserts that he was detained or arrested. This is insufficient to show that the Sixth Amendment applies because the right attaches after a prosecution begins, *i.e.*, the initiation of adversary judicial criminal proceedings. *McNeil*, 501 U.S. at 175.  Such an arrest or detention during the execution of a search warrant does not constitute the initiation of judicial criminal proceedings.  *See Gouveia*, 467 U.S. at 190 ("[W]e have never held that the right to counsel attaches at the time of arrest."); *United States v. Fautz*, No. 08-cr-352, 2011 WL 3515912, *58 (D.N.J. Aug. 11, 2011) (describing as "baseless" argument that pre-arrest and post-arrest statements should be suppressed under the Sixth Amendment because defendant invoked right to counsel at the outset of the search warrant).  Also, there is no indication that adversary criminal proceedings had commenced against McCullough at this time concerning the drug crimes. *See United States v. Mosby*, 101 F.3d 1278, 1282 (8th Cir. 1996) (concluding Sixth Amendment right had not attached when questioned by ATF about ammunition found during execution of search warrant because no adversary criminal proceedings had commenced about defendant's possession of

134

ammunition).  As a result, McCullough has failed to show that there was any Sixth

Amendment violation when law enforcement questioned him.

As for the Fifth Amendment, the undersigned concludes that McCullough has

failed to identify specific facts to show that he was "in custody."  Initially, the

undersigned notes that "in the usual case, a person detained during the execution of a

search warrant is not 'in custody' for purposes of Miranda."  *Burns*, 37 F.3d at 281.

Besides the execution of the search warrant, McCullough states that he was "asked to

stay seated on the couch in the residence."  [Doc. 157 at 2].  These two factors - - the

execution of the search warrant and a directive to stay on the couch - - do not

demonstrate that McCullough was "in custody."  First, this showing does not address

the factors identified by the Eleventh Circuit as being relevant to determining whether

an individual was "in custody," namely whether officers brandished weapons, touched

the suspect, or used language or a tone that indicated that compliance with the officers

could be compelled.  *Street*, 472 F.3d at 1309.  Also, the case law demonstrates that

circumstances far more coercive than those alleged by McCullough have not

established the "in custody" requirement.  *See United States v. Axsom*, 289 F.3d 496

(8th Cir. 2002) (holding that defendant was not "in custody" where defendant was told

to sit down on the couch, interviewed for an hour, not allowed to get his own water

135

(agents retrieved a drink for him), and escorted to the bathroom); *see also United States v. Thomas*, 193 Fed. Appx. 881, 886 (11th Cir. Aug. 16, 2006) (concluding that defendant was not "in custody" where she was handcuffed immediately after arriving home (though handcuffs were removed before questioning), she was told that she was not under arrest, and she voluntarily traveled in the front seat of a police cruiser to the station to give a statement); *United States v. Parker*, No. 1:10-cr-176, 2010 WL 5313758, *10 (N.D. Ga. Nov. 18, 2010) (King, M.J., *adopted by* 2010 WL 5313449 (N.D. Ga. Dec 17, 2010) (Carnes, J.)) (concluding defendant was not "in custody" where law enforcement had firearms drawn briefly, handcuffed defendant, questioned the defendant in public, and used a laid back tone).   Despite these failings, the undersigned will hold an evidentiary hearing on the issues of whether McCullough was in custody for purposes of the Fifth Amendment and whether McCullough's statements were voluntarily made.   Again, McCollough is reminded that he has the burden to establish he was in custody for purposes of *Miranda*.

Accordingly, the undersigned **DEFERS** resolving McCullough's motion to suppress statements on Fifth Amendment grounds, [Doc. 157], until an evidentiary hearing is held on the issue.

136

5.      *Bunch*

Bunch argues that statements he made on December 9, 2010, during and following his arrest violated his Fifth and Sixth Amendment rights.[42]  [*See* Doc. 148]. Bunch states without elaboration that the statements were coerced, and made without an intelligent and knowing waiver.  [*Id.* at 2-3].  He alternatively requests a *Jackson v. Denno* hearing to ensure that the statements were legally obtained.  [*Id.* at 5].

The undersigned will hold an evidentiary hearing on whether there was a violation of Bunch's Fifth Amendment rights.  As for Bunch's assertion that there was a violation of his Sixth Amendment rights, Bunch has not made any showing to demonstrate that his Sixth Amendment rights had attached as of December 9, 2010, because he has only alleged that law enforcement conducted a warrantless arrest.  *See United States v. Pace*, 833 F.2d 1307, 1311-12 (9th Cir. 1987) (citing *Gouveia*, 467 U.S.

---

[42]     Bunch has also asserted that his statements were in violation of the Fourth Amendment as incident to an unlawful arrest and Article 36 of the Vienna Convention on Consular Relations.  [Doc. 148 at 3].  As for the Fourth Amendment challenge, the undersigned will hold an evidentiary hearing on this ground as discussed in Part IV.D.2.b, *supra*.  As for Article 36 of the Vienna Convention, this provision "addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign country." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337 (2006).  There is no indication that Bunch is a foreign national in this country, so the undersigned fails to see the applicability of this provision to his case.  As a result, suppression is not warranted on this ground.

137

at 190) ("[T]he right to counsel under the sixth amendment does not attach at the time of arrest."); *see also Thomas v. Furge*, No. 98-2265, 175 F.3d 1021 (Table) (7th Cir. May 3, 1999) (noting that Sixth Amendment right to counsel had not attached at time of warrantless arrest); LaFave, 2 Crim. Proc. § 6.4(e) (3d ed.) ("Clearly this test [for when the right to counsel attaches] is not met merely because the defendant has been arrested without a warrant, nor is it met merely because the investigation has focused upon the defendant.").   As a result, the undersigned concludes that he has not established a violation of his Sixth Amendment rights.

As for Bunch's Fifth Amendment rights, the undersigned will hold a hearing. First, Bunch's allegations that officers came to arrest him demonstrates that he was "in custody" for purposes of the Fifth Amendment. *See Brown*, 441 F.3d at 1347 ( "A defendant is in custody for the purposes of Miranda when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' ") (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  Bunch has also stated that his statements were coerced and were made without a knowing waiver.  The undersigned will hold an evidentiary hearing to determine whether Bunch voluntarily made statements.

138

Accordingly, the undersigned **DEFERS** resolving Bunch's motion to dismiss statements, [Doc. 148], until an evidentiary hearing is held to determine whether he made statements in violation of his Fifth Amendment rights.[43]   The undersigned therefore **GRANTS** Bunch's request for a *Jackson v. Denno* hearing.

## V.   CONCLUSION

For all of the reasons discussed in detail above, the undersigned **RECOMMENDS** that: (1) McKenzie's motions to suppress evidence from the search at 925 Hemphill Road, [Docs. 112, 307, 316], be **DENIED** and McKenzie's motions to suppress evidence from the search of the 166 Alexander Drive residence, [Docs. 294, 308, 315], be **DENIED**; (2) the Whortons' motions to suppress evidence from the search of the 1828 Flat Rock Road residence by Sandra Whorton [Docs. 125 (S. Whorton), 163 (J. Whorton)], be **DENIED**; (3) the Autrys' motions to suppress evidence from the search of 166 Alexander Drive address, [Docs. 143 (H. Autry), 226 (K. Autry)], and supplemental motion to suppress, [Docs. 230 (H. Autry), 247 (K. Autry)], be **DENIED**; (4) the Autrys' motions to suppress evidence from the

---

[43]      The undersigned will hold an evidentiary hearing on whether his statements constitute fruit from the poisonous tree due to a Fourth Amendment violation.  *See* Part IV.D.2.b, *supra*.  The undersigned will not however consider whether Bunch's statements violated his Sixth Amendment rights or Article 36 of the Vienna Convention on Consular Relations at such a hearing.

139

925 Hemphill Road residence, [Docs. 200 (H. Autry), 227 (K. Autry)], and H. Autry's supplemental motion to suppress evidence from this residence, [Doc. 249] be **DENIED**; (5) McCullough's motions to suppress evidence from the search of 436 Hood Road, [Docs. 153-54], be **DENIED**; (6) McCullough's motion to suppress evidence from the search of 445 Hood Road, [Doc. 155], be **DENIED**; and (7) H. Autry's motion to suppress statements as fruits from an unlawful search, [Doc. 199], be **DENIED**.  The Court also **DENIES** the requests for *Franks* hearings.  [*See* Docs. 125, 155-56, 163, 205, 230, 249, 294, 308, 316].

For various reasons discussed above, the undersigned **DEFERS** making recommendations on the following motions until evidentiary hearings are concluded: (1) Butler's motions to suppress evidence from the search of 436 Hood Road, [Docs. 130, 213][44]; (2) Bunch's motions to suppress evidence from the search of 436 Hood Road, [Docs. 146, 196][45]; (3) Bunch's motion to suppress evidence from the

---

[44]    The hearing will consider whether under the Fourth Amendment law enforcement's entry onto the curtilage of the land was pursuant to a lawful knock and talk or an impermissible warrantless search.

[45]    The hearing will consider: (1) whether Bunch has standing to challenge the search of 436 Hood Road; and (2) if so, whether law enforcement's entry onto the curtilage of 436 Hood Road was lawful.

140

search of 1850 Flat Rock Road, [Docs. 147, 205][46]; (4) McCullough's motion to

suppress evidence from the search of 2220 Jodeco Road, [Doc. 156][47]; (5) S. Whorton's

motion to suppress evidence from the search of 1396 Commerce Drive, suites A and

B, [Doc. 183][48]; (6) McCullough's motion to suppress statements during the search of

445 Hood Road, [Doc. 157][49]; (7) McCullough's motion to suppress evidence of his

wedding band, [Doc. 197][50]; (8) S. Whorton's motion to suppress statements made

during the search of 1828 Flat Rock Road, [Doc. 124][51]; (9) McKenzie's motion to

---

[46]     The hearing will consider the following two issues: (1) whether law enforcement had probable cause to arrest Bunch without a warrant; and (2) whether the pre-warrant entry into 1850 Flat Rock Road residence was lawful.

[47]     The hearing will consider whether McCullough has standing to challenge the search of Backwoods Bar and Grill located at 2220 Jodeco Road.

[48]     The hearing will consider whether S. Whorton has standing to challenge the searches of Old South Amusement and JSCJ Manufacturing.

[49]     The hearing will evaluate two issues: (1) whether McCullough was "in custody"; and (2) whether McCullough's statements were voluntarily made under the Fifth Amendment.

[50]     The evidentiary hearing will consider whether the seizure of the ring violated McCullough's Fourth Amendment rights.

[51]     The hearing will consider: (1) whether S. Whorton was "in custody" when she made her statements; and (2) whether her statements were involuntarily made or made in violation of *Miranda*.

141

suppress evidence from his November 3, 2010, traffic stop, [Doc. 113][52]; (10) K.

Autry's motion to suppress statements made on November 3, 2010, [Docs. 225][53];

(11) H. Autry's motion to suppress statements made on November 3, 2010, [Docs.

142][54]; and (12) Bunch's motion to suppress statements on December 9, 2010, and the

fruits thereof, [Docs. 148, 205].[55]  Since the Court is holding hearings on the motions

to suppress statements, the Court **GRANTS** the requests for *Jackson v. Denno* hearings.

[*See* Docs. 113, 141, 148, 224].  The undersigned encourages the parties to narrow the

issues further so as to avoid evidentiary hearings on unnecessary issues.  The Court's

Courtroom Deputy will notify counsel and parties when the hearings will be conducted.

---

[52]     The evidentiary hearing relating to the traffic stop will relate to three issues: (1) whether McKenzie's statements were voluntarily made under the Fifth Amendment; (2) whether the traffic stop was supported by probable cause or reasonable suspicion; and (3) whether McKenzie voluntarily consented to the search of the truck.

[53]     The evidentiary hearing will consider: (1) whether K. Autry was "in custody" for Fifth Amendment purposes; and (2) whether K. Autry's statements were made in violation of the Fifth or Sixth Amendments.

[54]     The evidentiary hearing will consider: (1) whether H. Autry was "in custody" for Fifth Amendment purposes; and (2) whether H. Autry's statements were made in violation of the Fifth or Sixth Amendments.

[55]     The evidentiary hearing will consider whether Bunch's statements were coerced or made in violation of *Miranda*.

142

**IT IS SO ORDERED AND RECOMMENDED**, this the 29th day of August, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

143